[Cite as *In re AN.M.*, 2022-Ohio-2873.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE AN.M., ET AL.

Minor Children

[Appeal by A.M., Father]

:
:
:
:
:
:

No. 111368

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 18, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19914621 and AD-19914622

---

*Appearances:*

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

---

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant-father, A.M. ("Father"), appeals the juvenile court's decision terminating his parental rights and granting permanent custody of the minor children, An.M. and S.A., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency"). Father raises the following assignments of error for review:

1. The Cuyahoga County Juvenile Court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody of the subject children to the Cuyahoga County Department of Children and Family Services.

2. Father was deprived of the effective assistance of counsel by virtue of the fact that trial counsel did not request appointment of an attorney for the minor children when the guardian ad litem indicated in both her written and verbal reports that the children's wishes were to maintain a relationship with their father.

3. The Cuyahoga County Juvenile Court committed plain error and erred to the prejudice of the Father and the children by not appointing independent counsel for the children, as the children had expressed a desire to maintain a relationship with their father.

{¶ 2} After careful review of the record and relevant case law, we affirm the juvenile court's judgment.

## I. Procedural and Factual History

{¶ 3} Father and L.A. ("Mother") are the biological parents of the minor children, Ai.M. (d.o.b. 01/26/2006) and An.M. (d.o.b. 07/22/2010). Mother is also the biological parent of the minor child, S.A. (d.o.b. 08/9/2013). Prior to the initiation of these juvenile proceedings, Mother served as the legal custodian of the minor child, J.A. (d.o.b. 03/14/2017). Pertinent to this appeal, Father is not the biological father of S.A. or J.A.

{¶ 4} On December 5, 2019, CCDCFS filed a complaint alleging that the minor children were neglected as defined in R.C. 2151.03(A)(3). The complaint further alleged that Ai.M. was an abused child as defined by R.C. 2151.031(D). In support of the complaint, the agency alleged the following particulars:

1. Mother of Ai.M., An.M., and S.A., [L.A.], is the legal custodian of J.A. J.A. was previously adjudicated dependent due in part to her mother,

[E.H.], having anger management issues and a child endangering conviction. J.A. was ultimately committed to the legal custody of [L.A.] See Case No. AD17904209.

2. [L.A.] lacks stable and appropriate housing in which to provide for the children. [L.A.] has been transient at least since May 2019. The children were staying with two different relatives. On or about November 19, 2019, [L.A.] took the children from the relatives. The whereabouts of An.M., S.A., J.A., and [L.A.] are currently unknown. Ai.M. is currently living with a relative.

3. On or about November 20, 2019, [L.A.] choked Ai.M. and on or about November 21, 2019, [L.A.] slapped Ai.M. on the face and threw a mug at her. After the second incident, Ai.M. ran away from [L.A.]. Ai.M. does not wish to return to [L.A.]

4. Mother has failed to ensure An.M.'s and S.A.'s educational needs are met. An.M. and S.A. have not attended school at least since November 21, 2019.

5. Father of Ai.M. and An.M., [A.M.], does not regularly visit or communicate with Ai.M. or An.M.

6. [A.M.] has failed to ensure Ai.M. and An.M. have stable and appropriate housing.

7. Father of S.A., [V.P.], does not regularly visit or communicate with S.A.

8. [E.H.] has failed to communicate with J.A. since March of 2017.

9. [E.H.] has two older children who were adjudicated abused and dependent and committed to the legal custody of a relative. See Case Nos. AD16909960-61.

10. Father of J.A., [Je.A.], has criminal convictions in Cuyahoga Common Pleas Court for domestic violence where [E.H.] was the victim. *See* Case No. CR-16612671-A.

11. [Je.A.] lacks independent stable housing in which to provide for J.A.

{¶ 5} Following a hearing held on January 14, 2020, the children were committed to the predispositional temporary custody of CCDCFS. Thereafter,

Father entered admissions to an amended complaint and the court found the allegations of the amended complaint were proven by clear and convincing evidence. Accordingly, Ai.M. was "adjudicated to be abused and neglected," and An.M., J.A., and S.A. were each "adjudicated to be neglected." On February 27, 2020, a magistrate committed the children to the temporary custody of CCDCFS. The magistrate's decision was affirmed, approved, and adopted by the juvenile court in separate orders journalized on March 20, 2020, and March 24, 2020. In each judgment entry, the court stated, in relevant part:

> The court finds that the [children's] continued residence or return to the home of [Mother], at this time, will be contrary to the [children's] best interests.
>
> The court finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts to prevent the removal of the [children], to eliminate the continued removal of the [children] from the home, or to make it possible for the [children] to return home. The case specific findings are:
>
> [Mother] needs to ensure that the [children] attend school. She needs to complete a mental health and substance abuse assessment and follow recommendations. Mother needs to establish housing.
>
> [Father] needs to establish housing.

{¶ 6} While Mother and Father were addressing their respective case plan services, the juvenile court terminated the award of temporary custody of J.A. and committed her to the legal custody of her biological mother, E.H.

{¶ 7} On May 3, 2021, CCDCFS filed a motion to modify temporary custody of Ai.N., An.M., and S.A. to an order of permanent custody pursuant to R.C.

2151.413. The motion was supported by the affidavit of CCDCFS social worker, Carmella Campbell ("Campbell"), who averred, in pertinent part:

6. A case plan was filed with the Juvenile Court and approved that requires that Mother actively participate in and attend parenting classes, and follow any and all recommendations, and to obtain and maintain housing.

7. Mother was discharged from her parenting program in August 2020 due to her non-compliance.

8. Mother lacks stable and appropriate housing for herself and the children.

9. Mother has untreated mental health [issues] which prevents her from being able to care for the children and which Mother has failed to address.

10. Mother has failed to submit to court-ordered drug testing.

11. Mother has failed to support, visit, or communicate with the children for a period of greater than 90 days.

12. A case plan was filed with the Juvenile Court and approved which required that Father of Ai.M. and An.M., [Father], participate in an [alcohol and drug] assessment, follow any and all recommendations, participate in random drug screens, and live a lifestyle free of any substances.

13. Father was discharged from substance abuse treatment due to his continued cocaine usage.

{¶ 8} On February 9, 2022, a hearing was held to address the agency's motion for permanent custody. Father was not present at the hearing. Counsel for Father confirmed that Father had notice of the hearing but had not communicated with counsel for a period of weeks. Following a brief discussion on the record, the juvenile court denied a request for a continuance and proceeded in Father's absence.

{¶ 9} At the hearing, Aleesha Anderson ("Anderson"), an extended services worker employed by CCDCFS, testified that she was assigned to the children's case in July 2021. Anderson outlined her familiarity with the parents' history with the agency and explained the circumstances that led to the children's removal from Mother's home in January 2020. Specifically, Anderson stated that CCDCFS "received allegations that Mother choked [Ai.M.] and the family didn't have stable housing and were living in an abandoned home." (Tr. 12.) Regarding Father, Anderson testified that the agency was concerned with his lack of stable housing and his failure to have consistent contact with Ai.M. and An.M.

{¶ 10} Once the children were placed in the temporary care of CCDCFS, a case plan for reunification was developed to assist Mother and Father in addressing the issues that led to the children's removal. Anderson testified that Mother's case plan objectives required her to obtain stable housing, successfully complete parenting education classes, and to complete mental-health and substance-abuse assessments. Despite the agency's efforts to assist Mother in addressing her issues, Mother failed to obtain appropriate housing, failed to submit to court-ordered drug testing, repeatedly failed to complete parenting education courses offered through Beech Brook and Ohio Guidestone, and did not adequately address the agency's concerns with her mental health. Due to these ongoing concerns, Mother's visitation with the children was limited to once a week for two hours. Mother, however, did not participate in any in-person visits with the children from January 2020 to March 2020. Once in-person visits were postponed due to the COVID-19 pandemic,

Mother did not make herself available to participate in virtual visits with the children between March 2020 to June 2021. When Mother was provided the option to resume in person visits in June 2021, the children refused to see her. Anderson explained that "the children stated that they were afraid to see Mother due to her saying that if she were to see them, she would kidnap them." (Tr. 25.)

{¶ 11} With respect to Father, Anderson testified that his case-plan objectives required him to obtain stable housing and to undergo a drug-and-alcohol assessment. Anderson confirmed that Father successfully obtained appropriate housing. However, the agency continued to have concerns with Father's substance abuse following a positive test for cocaine in November 2020. Following his positive drug test, Father was referred to a local substance-abuse treatment center, New Visions, where he was expected to complete an intensive outpatient program. Anderson testified that Father failed to complete the treatment program and, in fact, tested positive for cocaine several times during the time he was enrolled at New Visions.

{¶ 12} Based on his continued substance abuse, New Visions recommended that Father complete a residential program. Father refused to participate in the residential program and was referred to Signature Health to complete an additional substance-abuse assessment in October 2021. Anderson confirmed that Signature Health did not recommend that Father participate in any substance abuse services following his assessment. However, she expressed concerns with Signature Health's assessment because Father withheld information and "wasn't honest about his

recommendations with New Visions." (Tr. 31.) In addition, Anderson stated that the agency remained concerned with Father's drug use based on his failure to complete random drug testing at the time it was requested. Anderson explained that when Father was asked to complete a urine screen, he would "wait about a week or two to complete the screen." (Tr. 32.) Father also refused to complete. Thus, Anderson opined that Father did not successfully address his case plan objectives for substance abuse because the agency was unable to verify whether Father is sober.

{¶ 13} Regarding visitation, Anderson confirmed that Father consistently participated in his supervised visits with the children between January 2020 and hair and nail follicle testing March 2020. Anderson testified that she had the opportunity to observe Father's visits and that his interactions with the children were appropriate. Based on Father's continued participation in the virtual visits offered during the COVID-19 pandemic, he was offered unsupervised visits and was eventually permitted to have overnight visits with the children. Anderson reiterated that the agency had no concerns with Father's interactions with the children until he tested positive for cocaine in November 2020. Following his positive drug test, Father was restricted to supervised visits with the children. However, Father declined to participate in the visits because "he felt like he shouldn't be supervised around his children." (Tr. 34.) Thus, Father did not have any visitation or contact with his children between November 2020 and December 2021. (Tr. 35.) Anderson testified that Father did have one phone conversation with the children in December 2021. However, between December 2021 and the date of the permanent custody

hearing, Father declined further opportunities to visit the children because "he stated it was too hard for him." (Tr. 35.)

{¶ 14} Based on the foregoing, Anderson testified that she did not believe the children could be safely reunified with their parents in the foreseeable future. Anderson explained that permanent custody in favor of CCDCFS was in the children's best interests

> because the agency isn't able to ensure that [Father] or [Mother] is sober. They haven't complied with any case plan services and remedied the concerns, and we still have concerns with [Mother]'s housing and her mental health.

(Tr. 37.) Anderson further noted that the children are adjusting well to their placement in foster care, where they have remained together since January 2020. The children have bonded with their foster mother and are having their medical and school needs met.

{¶ 15} Katie Morad ("Morad") testified that she is employed as an assessment counselor at Signature Health. Morad confirmed that she had an opportunity to perform a substance-abuse assessment of Father on October 21, 2021. Morad testified that following her assessment, she recommended that Father complete "a urine screen to ensure that he was absent from all substances." (Tr. 63.) Morad stated that Father completed the requested urine screen and that he tested negative. Morad further confirmed, however, that Father did not disclose during his assessment that he had previously been discharged from New Visions after testing positive for cocaine on multiple occasions. Father further failed to disclose that he

had previously been recommended for inpatient treatment. Morad testified that had Father disclosed this information she "would have recommended a higher level of care." (Tr. 64.)

{¶ 16} Anita Redding ("Redding") testified that she is employed as a nurturing parenting facilitator at Ohio Guidestone and Murtis Taylor. Redding confirmed that Mother was referred to Ohio Guidestone for parenting education services in September 2021. Redding testified that Mother did not consistently participate in the parenting classes and that her services were terminated in January 2022 "because of lack of engagement, not returning calls, all of that." (Tr. 66.)

{¶ 17} At the conclusion of the agency's case, Mother testified on her own behalf. Mother testified that she works odds and end jobs and was taking the appropriate steps to make improvements in her home. Regarding her failure to successfully complete parenting classes, Mother testified that she "[felt] like it was bogus." (Tr. 75.) She expressed that the agency's case was "based off a lie" and that she did not hit her child. (Tr. 75.) Mother further testified that she attempted to complete all required drug screens, but had issues with being monitored during the urine screens and had too short of hair to complete the follicle test. Accordingly, Mother opined that she was in a position to care for her children and that it would be in their best interests to be returned to her care.

{¶ 18} At the close of trial, the court heard from the child's guardian ad litem, Christina Joliat, Esq. (the "GAL"). Consistent with the recommendations of the

social worker, the GAL recommended that permanent custody be granted in favor of CCDCFS, stating, in relevant part:

> I am recommending permanent custody.
>
> I very much hoped that the children would be able to be reunited with [Father] and then that had fallen apart in December of 2020.
>
> We had expected his involvement in the substance abuse and things of that nature, and that did not occur.
>
> At that point mom wasn't really communicating and engaged, and in my visits with the children and speaking with them they have maintained for quite some time that, you know, that they prefer to stay together, number one, and if they're not able to go with father, they'd prefer to stay where they are.
>
> I know that it's not possible really for them to go anywhere else at this point and I am recommending permanent custody at this time.

(Tr. 85-86.)

{¶ 19} In her written report, dated July 8, 2021, the GAL similarly expressed that the "boys [An.M. and S.A] want to maintain a relationship with the father." On cross-examination, the GAL testified that she personally spoke with the children regarding their wishes on several occasions and that their wishes have "been consistent since at least December of 2020." (Tr. 87.)

{¶ 20} In separate journal entries dated March 4, 2022, the juvenile court granted the agency's motion for permanent custody of the minor children, S.A., Ai.M., and An.M. The juvenile court found, by clear and convincing evidence, that the children have been in the temporary custody of a public children services agency or private child placing agency for 12 or more months of a consecutive 22-month period. The juvenile court further concluded that it is in the best interests of the

children to be placed in the permanent custody of CCDCFS. In support of its best interest determination, the juvenile court made alternative findings pursuant to R.C. 2151.414(D)(1) and (D)(2).

{¶ 21} Father now appeals from the juvenile court's judgment in the cases of An.M. and S.A. Father acknowledges that the case involving J.A. was "previously disposed of," and that he "is not appealing the decision regarding Ai.M."

## II. Law and Analysis

### A. Standing

{¶ 22} Before assessing the merits of Father's assigned errors, we preliminarily note that our review is limited to the juvenile court's judgment pertaining to Father's biological child, An.M. As noted, Father has not appealed from the judgment pertaining to his biological child, Ai.M. Moreover, the record establishes that Father is not a biological parent of S.A.

{¶ 23} Standing to appeal is a jurisdictional prerequisite and only aggrieved parties have standing to appeal. *Goodman v. Hanseman*, 132 Ohio St.3d 23, 2012-Ohio-1587, 967 N.E.2d 1217, 1218, ¶ 1. When a trial court grants a children services agency permanent custody, the decision "divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations." Juv.R. 2(Z). Because Father is not S.A.'s natural or adoptive parent, the juvenile court's permanent custody decision did not divest him of any rights. Consequently, the juvenile court's decision awarding CCDCFS permanent custody of S.A. did not adversely affect Father. Under these

circumstances, we find Father lacks standing to challenge the juvenile court's judgment awarding CCDCFS permanent custody of S.A. *See In re R.M.*, 8th Dist. Cuyahoga Nos. 93471, 93473, and 93474, 2010-Ohio-165 (holding that the nonbiological father lacked standing to appeal the permanent custody decision pertaining to the nonbiological children where the nonparent did not claim to be the children's father and was not named as a party in the proceedings concerning them); *In re. B.C.-1,* 4th Dist. Athens Nos. 14CA43 and 14CA48, 2015-Ohio-2720, ¶ 32, citing *In re Matthews*, 3d Dist. Marion Nos. 9-07-28, 9-07-29, and 9-07-34, 2008-Ohio-276, ¶ 23; *In re A.La.*, 11th Dist. Lake Nos., 2011-L-20 and 2011-L-21, 2011-Ohio-3124, ¶ 2; *In re Neff*, 3d Dist. Allen No. 1-78-9, 1978 Ohio App. LEXIS 8722, 2 (June 14, 1978).

{¶ 24} We therefore consider Father's appeal only as it relates to his biological child, An.M.

### B. Permanent Custody

{¶ 25} In his first assignment of error, Father argues the juvenile court erred and abused its discretion in finding that clear and convincing evidence supported the court's decision to grant permanent custody of the children to CCDCFS. Father contends that the record demonstrates that he obtained stable housing, successfully completed a chemical-dependency assessment, and had positive visits with the children. He further states that the children consistently expressed their wishes to be placed in his care.

{¶ 26} We take our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody very seriously. A parent has a "'fundamental liberty interest' in the care, custody and management" of his or her child, *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and the right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 67, quoting *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 27} Because the termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" it is "an alternative [of] last resort." *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 776 N.E.2d 485, ¶ 14 (2002); *In re Gill*, 8th Dist. Cuyahoga No. 79640, 2002-Ohio-3242, ¶ 21. It is, however, "sanctioned when necessary for the welfare of a child." *In re M.S.*, 8th Dist. Cuyahoga Nos. 101693 and 101694, 2015-Ohio-1028, ¶ 7, citing *In re Wise*, 96 Ohio App.3d 619, 624, 645 N.E.2d 812 (9th Dist.1994). All children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio

App.3d 88, 102, 696 N.E.2d 1090 (8th Dist.1996). Where parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 5th Dist. Tuscarawas No. 85 A10-077, 1986 Ohio App. LEXIS 7860, 5 (Aug. 1, 1986).

{¶ 28} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). This first prong of this statute authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 29} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear

and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 30} "A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence 'if the record contains some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'" *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16. "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 31} With respect to the first prong of the permanent-custody analysis, we find competent, credible evidence supports the juvenile court's finding pursuant to R.C. 2151.414(B)(1)(d) that An.M. has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶ 32} For purposes of calculating time under subsection (d), R.C. 2151.413(D)(1) provides that "a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home."

{¶ 33} In this case, An.M. was initially removed from his parent's care on January 17, 2020. He remained in the agency's emergency custody until he was adjudicated neglected and committed to the temporary custody of the agency on March 20, 2020. Applying either date contemplated under R.C. 2151.413(D)(1), the record confirms that An.M. had been in the temporary care of the agency for 12 or more months of a consecutive 22-month period at the time the motion for permanent custody was filed on May 3, 2021. Because the time requirements under R.C. 2151.414(B)(1)(d) were satisfied, it was unnecessary for the court to determine whether any additional factor under R.C. 2151.414(B)(1) was applicable to the circumstances presented in this matter. *See In re M.G.*, 8th Dist. Cuyahoga No. 111144, 2022-Ohio-1077, ¶ 29, citing *In re L.W.*, 8th Dist. Cuyahoga No. 107648, 2019-Ohio-1344, ¶ 15, citing *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 21.

{¶ 34} Turning to the second prong of the permanent-custody analysis, we recognize "[t]he discretion that the juvenile court enjoys in [deciding] whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's [decision] will have on the lives of the parties concerned." *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). Thus, we review a juvenile court's determination of a child's best interests under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.

{¶ 35} An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). A decision is unreasonable when "no sound reasoning process" supports that decision. *AAAA Ents. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Franciscan Communities, Inc. v. Rice*, 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 33, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 36} "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 39. "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors * * * to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39. "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions *'are alternative* means for reaching the best-interest determination.'" (Emphasis sic.) *Id.*, quoting *In re J.P.* at ¶ 40.

{¶ 37} In determining the best interests of a child pursuant to R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

> Although a juvenile court is required to consider each relevant factor under R.C. 2151.414(D)(1) in making a determination regarding permanent custody, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, the Ohio Supreme Court has clarified that R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). Consideration is all the statute requires.

*In re A.M.*, 166 Ohio St.3d 127, 184 N.E.3d 1 (2020).

{¶ 38} In turn, R.C. 2151.414(D)(2) provides as follows:

If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent

custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶ 39} We reiterate that if the factors enumerated under R.C. 2151.414(D)(2) are applicable, permanent custody is per se in the child's best interest and the juvenile court is required to commit the child to the permanent custody of the agency. *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re J.R.*, 10th Dist. Franklin No. 17AP-698, 2018-Ohio-1474, ¶ 41.

{¶ 40} As previously stated, the juvenile court made alternative findings under R.C. 2151.414(D)(1) and (D)(2) in determining that an award of permanent custody to the agency was in An.M.'s best interest. Under such circumstances, this court has held that it is unnecessary to determine if the court correctly applied the R.C. 2151.414(D)(1) factors because "[a] finding under section (D)(2) of R.C. 2151.414 mandates that the trial court find it is in a child's best interest to be placed in the agency's permanent custody." *In re A.S.*, 8th Dist. Cuyahoga Nos. 110422 and

110472, 2021-Ohio-3829, citing *In re G.A.* at ¶ 59. Accordingly, our review focuses on the court's findings under R.C. 2151.414(D)(2).

{¶ 41} In this case, the juvenile court made the following findings in support of its determination that, pursuant to R.C. 2151.414(D)(2), permanent custody was in An.M.'s best interests:

> The Court further finds that the child has been in the agency's custody for two years and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code;
>
> That one or more of the factors in division (E) of section 2151.414 of the Revised Code exist and the child cannot be placed with one of the child's parents within a reasonable period of time or should not be placed with either parent;
>
> The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code and that prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in a motion for legal custody of the child[.]

{¶ 42} After careful consideration, we find there is competent, credible evidence in the record to support the juvenile court's reliance on the factors set forth under R.C. 2151.414(D)(2) and its conclusion that permanent custody to the agency is in child's best interests.

{¶ 43} To ascertain whether R.C. 2151.414(D)(2)(a) applies, we must look to R.C. 2151.414(E) because determining "that a child cannot be placed with the parents within a reasonable time or should not be placed with them, the court must find, by clear and convincing evidence, that at least one of the factors in R.C. 2151.414(E)(1)-(16) is present." *In re G.A.,* 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949 at ¶ 62, citing *In re S.C.,* 8th Dist. Cuyahoga No. 108036, 2019-Ohio-

3664, citing *In re S.W.*, 11th Dist. Ashtabula No. 2017-A-0089, 2018-Ohio-1672.

Here, the juvenile court included explicit findings under R.C. 2151.414(E)(1), (4), and (10), stating as follows:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> The parent demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
>
> The court further finds that the parent has abandoned the child.

{¶ 44} In support of these findings, the agency presented ample testimony that Mother and Father have failed to successfully remedy the significant issues that caused the children to be removed from their care. With respect to Mother, Anderson testified that Mother failed to obtain safe and stable housing and was discharged from her parenting-education classes based on her failure to engage in the sessions. In addition, Mother did not comply with the agency's request for a second mental-health assessment and did not complete requested drug screens. In turn, Father tested positive for cocaine in November 2020, and subsequently failed to successfully complete an outpatient treatment program. Father then refused to participate in a residential treatment program, withheld information during a second substance-abuse assessment, and failed to complete requested drug screens in a timely fashion.

**{¶ 45}** The record further reflects that Mother and Father each demonstrated a lack of commitment towards An.M. by failing to consistently communicate or visit with him during the pendency of the custody proceedings. We recognize that prior to Father's positive drug test in November 2020, he was attending his weekly visits with the children and demonstrated the ability to have positive interactions with each child. Following his positive drug test, however, Father refused to participate in supervised visits with the children because "he felt like he shouldn't be supervised around his children." (Tr. 34.) As a result of his reluctance to cooperate with the agency, Father only had one interaction with the children between November 2020 and the date of the permanent custody hearing on February 9, 2022. Mother similarly failed to demonstrate a willingness to have contact or build a relationship with her children while they remained in the temporary care of the agency.

**{¶ 46}** In contrast to the unstable relationship shared with their parents, the children share a strong bond with one another and have consistently expressed their desire to remain together. To this end, the children were placed together in the same foster home and "appear to be comfortable and bonded" with their foster mother. (Tr. 36.) Anderson testified that the agency has no concerns with the children's current placement and that the children's foster mother has ensured that the children's individual needs are being met. Under these circumstances, we find that the record clearly and convincingly supports the trial court's findings under R.C. 2151.414(D)(2)(a) and (E).

{¶ 47} We likewise find the evidence supports the juvenile court's findings pursuant to R.C. 2151.414(D)(2)(b), (c), and (d). As stated, An.M. was removed from his Mother's home in January 2020, and remained in the agency's custody throughout the pendency of these proceedings. Accordingly, as of the date of the permanent-custody hearing, An.M. had been in the agency's custody for two years or longer and no longer qualified for an extension of temporary custody. In addition, An.M. did not meet the requirements for a planned permanent living arrangement (to do so, a child must be at least 16 years old) and the agency was unable to identify any relatives who could take legal custody of him.

{¶ 48} Based on the foregoing, we cannot say that the juvenile court acted unreasonably, arbitrarily, or unconscionably in determining that it was in An.M.'s best interest to grant permanent custody to the agency pursuant to R.C. 2151.414(D)(2). Accordingly, we find, the juvenile court's award of permanent custody to CCDCFS is supported by clear and convincing evidence in the record and is not against the manifest weight of the evidence.

{¶ 49} Accordingly, Father's first assignment of error is overruled.

## C. Plain Error

{¶ 50} For the ease of discussion, we address Father's second and third assignments out of order. In his third assignment of error, Father argues the juvenile court committed plain error by failing to appoint independent counsel for the children, "as the children had expressed a desire to maintain a relationship with their father." In support of his position, Father states as follows:

It was an abuse of discretion for the court to disregard the children's wishes, as expressed by the Guardian ad Litem both in writing many months before the trial, and at the trial, and not take steps to safeguard their rights in this proceeding which forever severed their legal relationship with their father. It was also plain error, in that it amounted to a deviation from a legal rule, it is an obvious defect in these legal proceedings, and it has affected the substantial rights of these children. It further undermines the legitimacy of these underlying proceedings, which are supposed to be about what is best for these children.

{¶ 51} Pursuant to R.C. 2151.352,

[a] child, the child's parents or custodian, or any other person in loco parentis of the child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code.

{¶ 52} The Ohio Supreme Court has held "[p]ursuant to R.C. 2151.352 * * * a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, syllabus. A court's determination whether a child actually needs independent counsel should be made on a case-by-case basis, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. *Id.* at ¶ 17; *In re Brooks*, 10th Dist. Franklin No. 04AP-164, 2004-Ohio-3887, ¶ 79, 87. "'Generally, the appointment of independent counsel is warranted when a child has "repeatedly expressed a desire" to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the state.'" *In re D.N.*, 4th Dist. Ross No. 11CA3203, 2011-Ohio-4627, ¶ 46, quoting *In re Hilyard*,

4th Dist. Vinton Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, and 05CA609, 2006-Ohio-1965. ¶34-36 (footnotes omitted); *see also In re. K.S.,* 8th Dist. Cuyahoga No. 109928, 2021-Ohio-694, ¶ 40, citing *In re J.M.*, 8th Dist. Cuyahoga No. 104028, 2016-Ohio-7306, ¶ 27; *In re V.L.,* 12th Dist. Butler No. CA2016-03-045, 2016-Ohio-4898, ¶ 39; *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 19; *In re B.J.L.*, 2019-Ohio-555, 130 N.E.3d 906, ¶ 48 (4th Dist.).

{¶ 53} There is no dispute that Father did not request independent counsel for An.M. during the permanent-custody proceedings. He therefore waived all but plain error. Plain error exists when the error is plain or obvious and when the error affects a party's substantial rights. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Plain error does not exist unless, but for the error, the outcome at trial would have been different." *State v. Moreland,* 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." S*chade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982).

{¶ 54} In this case, the GAL informed the court that the children have "maintained for quite some time that, you know, that they prefer to stay together, number one, and if they're not able to go with father, they'd prefer to stay where they

are." (Tr. 86.) The GAL further expressed her disappointment with Father's failure to follow through with the progress he had demonstrated during the early stages of the custody proceedings. Nevertheless, given Father's failure to adequately address the agency's substance abuse concerns and his failure to consistently communicate with the children, the GAL expressed that it was not possible for the children "to go anywhere else at this point and I am recommending permanent custody at this time." (Tr. 86.)

{¶ 55} After careful consideration, we do not find that the desires of An.M. and the recommendations of the GAL conflicted to the extent that independent counsel was required to represent the child's wishes. Although An.M. consistently expressed his wish to maintain a relationship with Father and live with him *if possible*, An.M.'s statements to the GAL further reflected his understanding that if Father was not deemed to be an appropriate custodian, he wished to remain with his siblings in their foster home. In this regard, the GAL accurately relayed the wishes of the children but ultimately recommended that the evidence supported a determination that Father was not a suitable custodian and that it was in the child's best interests to award the agency permanent custody. The GAL's recommendation that An.M. remain in his current placement with his siblings was consistent with the possible outcomes contained within An.M.'s express wishes.

{¶ 56} Moreover, even if this court were to find the presence of a conflict, we are unable to conclude that, but for the alleged error, the outcome at trial would have been different. As discussed, competent and credible evidence supported the

juvenile court's determination that it was in the child's best interests to grant the agency permanent custody pursuant to R.C. 2151.414(D)(2). Unlike the factors contemplated under R.C. 2151.414(D)(1), section (D)(2) does not expressly require the court to consider the wishes of the child. In other words, given the duration of the temporary custody proceedings, the parents' continuous failure to remedy the issues that caused An.M.'s removal from their care, the inapplicable requirements of R.C. 2151.353(A)(5), and the lack of a suitable relative or interested party, the children's wishes would not have altered the court's best interests determination in this case. Accordingly, we find the appointment of independent counsel would not have resulted in a different outcome.

{¶ 57} The third assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶ 58} In his second assignment of error, Father argues he was deprived of effective assistance of counsel "by virtue of the fact that counsel did not request the appointment of an attorney for the minor children when the GAL expressed that the children wished to maintain a relationship with Father." Father contends that "had counsel been appointed for the children, their wishes would have been better represented and it is very probable that [appointment of counsel] would have changed the outcome of the [permanent custody judgment.]"

{¶ 59} It is well settled that an indigent parent is entitled to the effective assistance of appointed counsel when the state seeks to terminate his or her parental rights. *In re A.C.*, 8th Dist. Cuyahoga No. 99057, 2013-Ohio-1802, ¶ 45. "'[T]he test

for ineffective assistance of counsel used in criminal cases is equally applicable in actions seeking to force the permanent, involuntary termination of parental rights.'" *Id.*, quoting *In re P.M.*, 179 Ohio App.3d 413, 2008-Ohio-6041, 902 N.E.2d 74, ¶ 15 (2d Dist.).

{¶ 60} To establish ineffective assistance of counsel, Father must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. Prejudice is established when the defendant demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 61} Consistent with our resolution of Father's third assignment of error, we find Father cannot demonstrate the requisite level of prejudice to support his claim of ineffective assistance of counsel. Competent and credible evidence supported the juvenile court's findings under R.C. 2151.414(B)(1)(d) and 2151.414(D)(2). Because permanent custody is per se in the child's best interest where the enumerated factors under R.C. 2151.414(D)(2) are applicable, we are unable to conclude that the juvenile court would have reached a different conclusion had counsel requested the court to appoint independent counsel to represent An.M.'s wishes.

{¶ 62} The second assignment of error is overruled.

**{¶ 63}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., and
LISA B. FORBES, J., CONCUR