[Cite as *In re L.D.*, 2017-Ohio-1037.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104325**

# IN RE: L.D., ET AL.
# Minor Children

[Appeal By A.S., Mother ]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 14912233, AD 14912234, and AD 14912235

**BEFORE:** Jones, J., Stewart, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 23, 2017

**ATTORNEYS FOR APPELLANT**

Patrick S. Lavelle
Van Sweringen Arcade
123 West Prospect Avenue, Suite 250
Cleveland, Ohio 44115

Robert L. Tobik
Cuyahoga County Public Defender

Cullen Sweeney
Assistant County Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

**For CCDCFS**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Joseph C. Young
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, Ohio 44115

**For Guardian ad litem**

Thomas Kozel
P.O. Box 534
North Olmsted, Ohio 44070

LARRY A. JONES, SR., J.:

{¶1} A.S., Mother, appeals the trial court's March 16, 2016 judgments granting the motion of the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the Agency" ) to modify temporary custody to permanent custody for each of her three children. For the reasons that follow, we affirm.

## I. Procedural and Factual History

{¶2} The Agency first became involved with the family in this case in 2008, at which time the oldest child, G.D., then six months old, was removed from the care of Mother and R.D., Sr., the alleged Father.[1] Throughout the pendency of this case, Mother and alleged Father lived together. G.D. was removed from the home because of Mother and alleged Father's issue with substance abuse and housing. He was adjudicated dependent.

{¶3} In 2009 and 2012, two other children were born: R.D., Jr. and L.D., respectively. Both children were removed by the Agency at birth because of Mother's positive toxicology screens and thereafter adjudicated dependent. All three children were placed in the care of their maternal grandfather. One of the social workers for the case, David Duncan ("Duncan"), testified at trial that Mother's involvement and visitation with the children when they lived with grandfather was "very little."

---

[1] The alleged Father's parental rights were also terminated, but he has not appealed; therefore, we will only minimally discuss him, as is necessary to resolve Mother's appeal.

{¶4} In September 2014, grandfather passed away, at which time this case was initiated by CCDCFS filing for emergency custody of the children, which was granted. At that time, the Agency established, and the court approved, case plans for the parents, with the goal of reunification. Mother's case plan included assessments and treatments for substance abuse and mental health issues. To monitor her substance abuse issues, the Agency requested Mother to submit to drug tests. Five requests were made throughout the pendency of the case; Mother complied once, and the result was negative.

{¶5} In April 2015, CCDCFS filed a motion to modify temporary custody to permanent custody for all three children.

{¶6} Dr. Kathryn Kozlowski ("Dr. Kozlowski"), a clinical psychologist for the Cuyahoga County Juvenile Court Diagnostic Clinic, interviewed Mother in July 2015. Dr. Kozlowski testified at trial that, based on the interview, she concluded that Mother had the following: dysthymia, which is a severe form of depression; generalized anxiety disorder with panic attacks; and poor frustration tolerance.

{¶7} Dr. Kozlowski believed that Mother needed counseling and medication, and, therefore, she sent Mother to another professional for testing. Dr. Kozlowski testified that she learned that the testing was started, but not completed because Mother said she did not feel well and went home. The person administering the testing asked Mother to call the following day to make arrangements to come back and complete the testing. Mother never called or otherwise made arrangements to complete the testing.

{¶8} In August 2015, the trial court held a hearing, at which Mother's failure to follow through with her case plan objectives was discussed. The court admonished Mother that "you'd have to show substantial compliance with the case plan in order for [the court] to be able to extend temporary custody."

{¶9} In January 2016, CCDCFS filed a motion for a "finding of reasonable efforts to finalize a permanency plan and for specific findings." A hearing was held on the motion, after which the court issued the following findings:

> The parents have refused to engage in correcting the conditions that led to removal. The Court finds that Cuyahoga Division of Children and Family Services has made reasonable efforts to prevent the removal of the child[ren], to eliminate the continued removal of the child[ren] from the home, or to make it possible for the child[ren] to return home. Relevant services provided to the family: mental health assessment and treatment if recommended; substance abuse assessment and treatment; random urine screens; [and] counseling for the child[ren].

{¶10} On March 4, 2016, days before the March 10, 2016 trial date, the court held another hearing, at which it found that on March 2, 2016, Mother had submitted to a chemical dependency and mental health assessment; however, results of the assessments were not available at that time or at the time of trial. The court also made the following findings:

> The Court finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts to prevent the removal of the child[ren], to eliminate the continued removal of the child[ren] from the home, or to make it possible for the child[ren] to return home. Relevant services provided to the family * * *: substance abuse assessment and treatment as recommende[d] * * *; mental health assessment, random drug screens for the Mother.

{¶11} The trial proceeded on March 10, 2016, after Mother and alleged Father's requests for a continuance were denied. Duncan, the social worker, testified about the Agency's attempts to engage Mother to utilize various services so that she could achieve the goals of her case plan and be reunified with her children. He testified that communicating with Mother was challenging because she frequently did not answer her phone and messages left for her often went unreturned. Further, Duncan attempted to have home visits with Mother and alleged Father, but alleged Father would not allow it and, therefore, Duncan was unable to make a determination regarding whether the home was appropriate for the children.[2]

{¶12} In addition to the "very limited" visitation Mother had with the children when they lived with the maternal grandfather, Duncan testified that after grandfather passed away in September 2014, Mother's visitation was still sporadic. Specifically, she visited the children once in January 2015, twice in September 2015 and once in October 2015. Duncan testified that Mother lived in the same neighborhood where the visitations were scheduled to occur, but that often times she was a "no show," which frustrated both the children and the foster parents.

{¶13} Duncan testified that Mother and the children had a "good, very positive" relationship, but the children got upset when she did not show or was late for the visitations, and it took a lot to calm them down afterwards. For example, G.D. had an

---

[2]The children's guardian ad litem ("GAL"), Thomas Kozel, similarly was not allowed a home visit.

"outburst" after a visitation for which Mother was late and the incident resulted in his being removed from the home where he had previously lived with R.D., Jr. and L.D.

{¶14} At the time of trial, G.D. was eight years old, R.D., Jr. was six years old, and L.D. was four years old, and they all had been, since their removal from Mother, continuously in the Agency's care. Thus, G.D. had only lived with Mother the first six months of his life, and R.D., Jr. and L.D. had never lived with her. They had had three placements during the pendency of the case.

{¶15} It was the opinion of Duncan and GAL Kozel that permanent custody was in the best interests of the children. The trial court agreed, and granted the Agency's motion. In addition to finding that permanent custody was in the children's best interest, the court also found that the children were "abandoned" and could not be placed with Mother because she "failed to remedy the situation [which caused them to be removed] and failed to support and visit the children, * * * to comply with the case plan and there were no available relatives to care for the children." Mother now appeals, raising the following assignments of error for our review:

> I. The trial court's award of permanent custody to DCFS, despite DCFS's failure to make reasonable efforts to eliminate the continued removal of the children from their home and to return the children to their home, violated state law and appellant's right to due process of the law as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.

> II. The trial court's decision to award permanent custody to DCFS was against the manifest weight of the evidence.

III. The trial court's failure to discuss the wishes of the children and their relationship with A.S. Mother in determining the best interests of the children constitutes reversible error.

## II. Law and Analysis

{¶16} We consider Mother's three assignments of error together, and for the reasons that follow, find them not well taken.

**Reasonable Efforts at Reunification**

{¶17} In her first assignment of error, Mother challenges the trial court's finding that CCDCFS made reasonable efforts to reunify her with her children. Her challenge is based on two grounds: (1) that the trial court's findings were not sufficient and (2) that the Agency failed to develop a case plan to help her be reunified with her children.

{¶18} As to the first ground regarding the sufficiency of the trial court's reasonable efforts finding, as conceded by Mother, a reasonable efforts determination is not required by statute or controlling precedent upon a motion for permanent custody or to the hearings held on such motions. The Ohio Supreme Court addressed this issue, holding that the statute governing a reasonable efforts determination "[b]y its terms,"

> applies only at hearings * * * [that] involve adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state. The statute makes no reference to a hearing on a motion for permanent custody.

*In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41.

{¶19} The court concluded, therefore that, "[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to

hearings held on such motions pursuant to R.C. 2151.414." *Id.* Nonetheless, the court further stated the following:

> This does not mean that the agency is relieved of the duty to make reasonable efforts. At various stages of the child-custody proceeding, the agency may be required under other statutes to prove that it has made reasonable efforts toward family reunification. To the extent that the trial court relies on R.C. 2151.414(E)(1) at a permanency hearing, the court must examine the "reasonable case planning and diligent efforts by the agency to assist the parents" when considering whether the child cannot or should not be placed with the parent within a reasonable time. However, the procedures in R.C. 2151.414 do not mandate that the court make a determination whether reasonable efforts have been made in every R.C. 2151.413 motion for permanent custody.

*Id.* at ¶ 42.

{¶20} The record here demonstrates that the trial court made determinations that CCDCFS made reasonable efforts to reunite Mother and the children throughout the pendency of this case, including at trial, where the Agency's motion for permanent custody was decided. At trial, the court stated the following in response to Mother's insinuation that reasonable efforts had not been made because there had been a rotation of five social workers on the case, and her contention that she did not get the letter detailing her case plan objectives:

> [T]here was never any testimony that the fact that there were five caseworkers, that that inhibited [Mother] from complying with the case plan objectives. * * * I would argue that [Mother was] in receipt of that letter and just chose not to follow it * * * until * * * at the last moment. And the problem I have with that kind of reasoning and that behavior is that if you have that perspective, that mentality to say that * * * this is something really important for me, something really imperative for me, but I'm going to delay it, then what's to say that when there's an * * * imperative issue regarding your children that you're not going to delay it? Because if you

do that, these children will be hurt. * * * And in this case you haven't done anything until the last moment. These kids deserve better than that.

{¶21} The court also made the following reasonable efforts determination in each of the three written judgments (one for each child) granting permanent custody to the Agency:

> The Court further finds that reasonable efforts were made to prevent the removal of the child[ren] from [their] home, or to return the child[ren] to the home, and to finalize the permanency plan, to wit: reunification. * * * Following the placement of the child[ren] outside of [their] home and notwithstanding reasonable case planning and diligent efforts by the agency to assist [Mother] to remedy the problems that initially caused the child[ren] to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child[ren] to be placed outside [their] home. * * * The Court further finds that the [CCDCFS] has made reasonable efforts * * * to make it possible for the child[ren] to safely return home through the provision of supportive services.

{¶22} In light of the above, Mother's contention that the trial court failed to make adequate findings regarding the Agency's reasonable efforts at reunification is without merit.

**Case Plan**

{¶23} Mother also claims that CCDCFS failed to develop a case plan that would assist her with reunification with her children. We disagree.

{¶24} The complaint in this case was filed in September 2014, and the Agency developed and filed with the court a case plan for Mother in October 2014. The main objectives of the plan were to address and remedy issues Mother had with substance abuse and mental health. An adjudicatory/dispositional hearing was held on December

3, 2014; Mother was present, the details of the case plan were discussed, and the court approved it.

**{¶25}** The plan was also discussed at other hearings throughout the pendency of this case. Moreover, court orders reiterated Mother's plan. The testimony of Duncan, Dr. Kozlowski, and GAL Kozel all indicated that the Agency developed a plan for Mother in an attempt to address her substance abuse and mental health issues, and reunify her with her children. The record here demonstrates that, during the time since the plan was developed and approved in 2014, until the "eleventh hour" just prior to trial, Mother simply did not put forth the needed effort to attempt to demonstrate that she was addressing the issues that caused her children's removal.

**{¶26}** On this record, we find Mother's contention that CCDCFS failed to develop a case plan with reunification in mind not well taken.

**{¶27}** The first assignment of error is overruled.

**Permanent Custody Determination: Weight of the Evidence**

**{¶28}** For her second assignment of error, Mother contends that the trial court's judgment granting permanent custody of the children to CCDCFS is against the weight of the evidence.

**{¶29}** In addressing this assignment of error, we initially note that a parent has a "fundamental liberty interest" in the care, custody, and management of his or her children and an "essential" and "basic civil right" to raise his or her children. *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990). A parent's right is not absolute,

however. "The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

**{¶30}** "If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." *In re P.R.*, 8th Dist. Cuyahoga No. 79609, 2002-Ohio-2029, ¶ 15. Thus, when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶31}** We also note that a trial court enjoys wide discretion in custody matters, and that discretion should be accorded the utmost respect given the nature of the proceeding and the impact the court's determination will have on the lives of the parties involved. *In re Satterwhite*, 8th Dist. Cuyahoga No. 77071, 2001 Ohio App. LEXIS 3722, *6-7 (Aug. 23, 2001), quoting *In re Benavides*, 8th Dist. Cuyahoga No. 78204, 2001 Ohio App. LEXIS 2002 (May 3, 2001).

> "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures, and voice inflections, and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record."

*In re Satterwhite* at *7, quoting *In re Benavides*. As the Ohio Supreme Court has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990).

{¶32} The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶33} Mother contends that the trial court's finding that the children were abandoned is not supported by the record, and therefore, under R.C. 2151.414(B)(1), the Agency would have been entitled to permanent custody only if it proved that (1) the children could not or should not be placed with her within a reasonable period of time and (2) permanent custody was in the children's best interest. According to Mother, neither of those requirements were demonstrated. For the following three reasons, her contention is without merit.

{¶34} First, we consider the trial court's finding of abandonment. R.C. 2151.011(C) provides that, for purposes of R.C. Chapter 2151, "a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

**{¶35}** The evidence here demonstrated that after the Agency obtained custody of the children in September 2014, when grandfather passed away, it was not until January 2015 that Mother had her first visit with the children. Thus, because Mother had failed to visit the children in that more than 90-day period, the trial court found that she abandoned them. Further, the court found her lack of visitation during this period particularly troubling because not only did the children have to deal with the loss of their grandfather/care giver, but they also had to deal with lack of visitation from Mother. On this record, competent credible evidence supports the trial court's abandonment finding.

**{¶36}** Second, for the reasons already discussed, namely, Mother's lack of action on achieving her case plan objectives, the trial court also found that the children could not or should not be placed with Mother within a reasonable time. The determination is supported by competent credible evidence. In sum, a case plan was developed for Mother and from the time it was developed to the time of trial approximately 17 months had passed and Mother did very little to comply with its requirements and reach its objectives.

**{¶37}** Third, the best interest of the children determination is also supported by competent credible evidence. When determining whether a grant of permanent custody is in the children's best interests, the juvenile court, in addition to any other relevant factors, must consider the following factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period ***;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶38} In regard to the children's interaction with various significant individuals in their lives under subsection (a), the record demonstrates that they had a positive relationship with Mother. But, due at least in part to Mother's lack of visitation with them, the children had challenges, which resulted in G.D. being removed from where he had been living with R.D., Jr. and L.D. The record further demonstrates that while the children are bonded with each other, they also have difficulties with each other, which is exhibited by aggressive behavior toward each other. This court has considered instances where the parent and children have bonded relationships, but other struggles exist, stating that:

> while a loving relationship is beneficial and important for the children's overall development, "the mere existence of a good relationship is insufficient." *In re T.W.*, 8th Dist. Cuyahoga Nos. 86084, 86109, and

86110, 2005-Ohio-6633, ¶ 15. Rather, the courts must consider the best interest of the children, and a child's best interests "require permanency and a safe and secure environment," regardless of the relationship with the child. *In re Holyak*, 8th Dist. Cuyahoga No. 78890, 2001 Ohio App. LEXIS 3105, 10 (July 12, 2001); *see also In re S.C.*, 8th Dist. Cuyahoga No. 102349, 2015-Ohio-2280; *In re J.B.*, 8th Dist. Cuyahoga Nos. 98518 and 98519, 2013-Ohio-1703. And a mother's bond with her children is not weighed more heavily than the other statutory best interest factors. *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, ¶ 56.

*In re J.M.*, 8th Dist. Cuyahoga No. 104030, 2016-Ohio-7307, ¶ 61.

**{¶39}** In light of the above, the trial court properly considered Mother's relationship with her children vis-a-vis other issues that existed in the case.

**{¶40}** Subsection (b) is relative to the children's wishes. Because of their ages, the GAL advocated on their behalf. He recommended that permanent custody be granted to CCDCFS, stating the following:

[Mother has] had over nineteen months to complete case plan services. In that time the only thing completed was that Mother partially completed a psychological evaluation. Mother is insistent that she does not need a drug assessment or mental health counseling. As such I do not believe giving Mother additional time to complete services will result in any further progress on completing case plan services. These children are in need of a permanent home that can only be achieved by the granting of permanent custody. The parents are not now or in the foreseeable future able to care for these children. As such, the granting of permanent custody to CCDCFS is in the children's best interest.

**{¶41}** Thus, the GAL's recommendation weighed in favor of permanent custody.

**{¶42}** Relative to the children's custodial history under subsection (c), Mother contends that this factor is in her favor because the children had not been in the Agency's care for a consecutive 12-month out of 22-month period. She cites *In re C.W.*, 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶ 26, wherein the Ohio Supreme Court

held that the time that passes between when the Agency filed its motion for permanent custody and the date of the hearing on the motion does not count toward the 12-month period.

{¶43} Mother is correct that, in light of the above, her children were not in the care of CCDCFS for a continuous 12 out of 22-month period; and the trial court did not make that finding. But subsection (c) is not limited to consideration of the so-called "12 of 22" rule. Rather, the statute states that the rule is to be "included" in considering the children's custodial history.

{¶44} A custodian is "a person who has legal custody of a child or a public children services agency or private child placing agency that has permanent, temporary, or legal custody of a child." R.C. 2151.011(B)(12). The record reflects that G.D., who was eight years old at the time of trial, had been in the care of a custodian since he was six months old, and R.D., Jr. and L.D., who at the time of trial were six and four years old, respectively, had been in the care of a custodian since birth. Their custodial history, therefore, also weighed in favor of permanent custody.

{¶45} As mentioned, and related to subsection (d), in his recommendation, the GAL addressed his belief that, based on Mother's noncompliance with her case plan during the pendency of this action, the matter should not be continued as the children could not or should not be placed with her. The GAL further opined that the children were in need of secure, permanent placement.

**{¶46}** The final consideration under R.C. 2151.414(D)(1) is found in subsection (e), and relates to the factors under subsection R.C. 2151.414(E) as to whether a child cannot or should not be placed with the parent within a reasonable period of time. Those factors include (1) failure to remedy the situation that initially caused the removal of the children; (2) a lack of commitment by the parent toward the children by failing to regularly visit, support or communicate with them; and (3) abandonment of the children. As discussed, the trial court found that all of the above applied in this case, and that finding supported its determination that it was in the children's best interest that permanent custody be granted to the Agency.

**{¶47}** In light of the above, the weight of the evidence supports the trial court's judgments granting permanent custody of the children to CCDCFS. Mother's second assignment of error is therefore overruled.

**Best Interests Determination**

**{¶48}** For her final assignment of error, Mother contends the trial court's decision must be reversed because its judgment entries failed to detail its consideration of the statutory factors relating to the children's relationship with Mother and each other. This court has rejected the proposition that it is reversible error that a trial court judgment did not explicitly discuss each of the statutory best interest factors, stating the following:

> The statute does not require the court to list those factors or conditions it found applicable before making its determination that the child cannot be placed with either parent or that the permanent custody is in that child's best interest. * * * [the parent] could have requested a written opinion that set forth the court's findings of fact and conclusions of law as authorized by R.C. 2151.353(A)(4) upon the court's grant of permanent custody, but did

not do so.   Absent such a request and as long as the record supports the court's decision, the trial court was not required to journalize an entry that demonstrates that it considered statutory factors or evidence to support those factors before making a finding that the child could not be placed with either parent and that permanent custody is in the child's best interest.

*In re I.M.*, 8th Dist. Cuyahoga Nos. 82669 and 82695, 2003-Ohio-7069, ¶ 27.

**{¶49}** For the reasons discussed, the record supports the trial court's determination that permanent custody to the Agency was in the children's best interest.   The third assignment of error is overruled.

**{¶50}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, P.J., and
PATRICIA ANN BLACKMON, J., CONCU0R