[Cite as *In re J.H.*, 2022-Ohio-4405.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE J.H., ET AL.                  :

Minor Children                      :          No. 111665

[Appeal by N.H., Father]            :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 8, 2022

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-21902189 and AD-22900097

*Appearances:*

Michael Gordillo, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, J.:

{¶ 1} Appellant, Father ("appellant" or "Father"),[1] appeals a juvenile court

judgment granting permanent custody of his minor children, A.T. and J.H., to

---

[1] The parties are referred by the terms "Father" and "Mother" in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

appellee, Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). He claims the following error:

> The trial court's award of permanent custody and termination of the appellant's parental rights is against the manifest weight of the evidence.

{¶ 2} We find that the trial court's judgment is supported by the manifest weight of the evidence and affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Appellant is the father of A.T., born in December 2018, and J.H., born in November 2020. A.T. was removed from both her parents and placed in emergency custody in February 2019 after CCDCFS received a report that neither Father nor the child's mother ("Mother")[2] were capable of properly caring for their three-month old child. The agency was concerned that Mother, who was 17 years old at the time, had substance abuse issues and demonstrated poor decision-making abilities. The agency was also concerned that Father had problems with substance abuse, lacked adequate housing and parenting skills, and was not involved with the child. In June 2019, A.T. was adjudicated dependent and placed in the temporary custody of the agency. A.T. has remained continuously in agency custody since that time.

{¶ 4} In August 2020, the agency filed a motion to modify temporary custody of A.T. to permanent custody. During the pendency of those proceedings, J.H. was

---

[2] Mother filed a separate appeal. *See In re A.T.*, 8th Dist. Cuyahoga No. 111669. Therefore, this opinion concerns only Father's appeal.

born and removed to the agency where he has remained since birth. In November 2020, CCDCFS filed a complaint for dependency and temporary custody of J.H., alleging that both Mother and Father had an older child in agency custody. J.H. was placed in the temporary custody of CCDCFS in June 2021, at which time the juvenile court also ordered that A.T. be placed in the permanent custody of CCDCFS.

{¶ 5} This court reversed the order placing A.T. in the permanent custody of CCDCFS in an appeal brought by Mother, who had, at that time, made some progress with her case plan. *See In re A.T.*, 8th Dist. Cuyahoga No. 110689, 2021-Ohio-4306. Father was not a party to that appeal. On remand, A.T. was again placed in the predispositional temporary custody of CCDCFS pursuant to a newly-filed complaint in January 2022. According to the newly-filed complaint, A.T.'s continued removal was due, in part, to Father's ongoing substance abuse, parenting deficiencies, and domestic-violence and mental-health issues. By that time, Father was also incarcerated and thus unable to care for A.T.

{¶ 6} The court held an adjudicatory hearing on A.T's case in February 2022. Both Mother and Father appeared at the hearing with counsel and stipulated to certain allegations. As relevant here, Father, who attended the hearing telephonically from prison, admitted that he was currently incarcerated and that due to his incarceration, he had not supported, visited, or communicated with A.T. since birth. Based on the parties' admissions, the court again adjudicated A.T. dependent and ordered that she remain in the temporary custody of the agency.

**{¶ 7}** The juvenile court ultimately conducted a trial on the agency's requests for permanent custody of A.T. and J.H. in May 2022. Shakeyah McKether ("McKether"), who is now a supervisor with CCDCFS, testified that she was originally assigned to A.T.'s case in February 2019 when the agency took A.T. into emergency custody. McKether testified that although the agency prepared to work with Father to remedy the conditions that led to the children's removal, he "did not make himself available to the Agency" before he was incarcerated. (May 19, 2022, tr. 36.)

**{¶ 8}** According to Angela McAnerney ("McAnerney"), the CCDCFS case worker who took over the cases of A.T. and J.H. in May 2021, the agency's ultimate goal was reunification of the children with either or both parents. (May 19, 2022, tr. 42.) However, Father never worked on a case plan to develop the skills necessary to adequately parent the children due to his incarceration. (May 19, 2022, tr. 42.) McAnerney explained that she mailed case plans to Father in prison, but he never responded to them. (May 19, 2022, tr. 43.) Therefore, according to McAnerney, Father never made any progress with any case-plan services designed to remedy the conditions that lead to the removal of his children. McAnerney opined that an order granting permanent custody of the children to the agency was in the children's best interest because neither parent had demonstrated that he or she had remedied the problems that lead to the removal of the children in the first place.

**{¶ 9}** Father testified on his own behalf at the trial. He stated that he had been in prison since December 22, 2020, following a domestic-violence incident

involving Mother. He was on probation for a different case at the time he committed domestic violence, and the judge ordered him to serve the three-year suspended sentence in the other case. Father testified that he was behaving well in prison, and he expected to be released on November 12, 2022. While in prison, Father passed his GED and was taking college courses. He stated that he was "a straight A student." (May 19, 2022, tr. 111.) Father also received ten certificates for completing various programs in 2021 and obtained an OSHA 10 certificate.

{¶ 10} On cross-examination, Father testified that he called Mother a few times from prison "for the update on the well-being of [his] children." (May 19, 2022, tr. 116.) When the prosecutor asked if Father had called McAnerny from prison, Father claimed he was unable to call her because he could not call a government agency collect. (May 19, 2022, tr. 118-119.) He admitted, however, that he had "money on [his] phone" when he called Mother. (May 19, 2022, tr. 119.) After asserting that he was a good father, Father acknowledged that he left Mother in a stolen car with a broken foot when she was pregnant. (May 19, 2022, tr. 119.)

{¶ 11} At the time of trial, J.H. and A.T. had been residing with the same foster family since A.T. was three-months old and since J.H. was one-day old. (May 19, 2022, tr. 56, 100.) The children's foster mother, testified that the children live in her home with herself, her husband, and their two biological sons, who are 12- and 9-years old. According to foster mother, the older two boys help care for the younger children and "all four kids are very bonded." (May 19, 2022, tr. 101.) The younger children refer to them as their "brothers." (May 19, 2022, tr. 100.)

{¶ 12} Russ Gates, the children's guardian ad litem ("GAL"), also opined that permanent custody was in the children's best interest. He explained:

> Based on my investigation, which is summarized in the report I submitted recently, I believe it would be in the best interest of both children to be committed to the permanent custody of the Agency.
>
> I think if the children were returned to the mother, they would be at very high risk of neglect and abuse.
>
> I think that they're doing very well in the home that they've been in for their entire lives, basically. And to remove them from that and put them in a very traumatic — situation a risk of a very dangerous situation would be a bad idea.

(May 19, 2022, tr. 122.) In a written report, the GAL further explained, in relevant part:

> As alluded to, the Father is a danger to the children in my view, physically and emotionally, and an inappropriate caregiver. He is currently incarcerated for intimidation of a witness (threatening to kill his stepmother 30 times) and burglary. The Mother and Father have a history of violent altercation. On the other hand, both children are thriving in placement. There are no significant concerns for J.H. and A.T. in the view of the social worker and myself.

{¶ 13} At the conclusion of the trial, the juvenile court determined that the children could not be placed with either parent within a reasonable time and that permanent custody was in their best interests. The court, therefore, granted permanent custody of the children to the CCDCFS. This appeal followed.

## II. Law and Analysis

## A. Standard of Review

{¶ 14} In the sole assignment of error, Father argues the trial court's award of permanent custody and termination of Father's parental rights is against the manifest weight of the evidence.

{¶ 15} A parent has a "fundamental liberty interest * * * in the care, custody, and management of [his or her child]." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The termination of parental rights is regarded as "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Consequently, parents "'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 16} Nevertheless, a parent's right to the care and custody of his or her child is not absolute. *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, ¶ 49. "'[T]he natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principal to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

## B. Permanent Custody Standard

{¶ 17} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). This first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 18} When any one of the above factors exists, the second prong of the analysis requires the juvenile court to determine, by clear and convincing evidence, whether it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 19} "A juvenile court's decision to grant permanent custody will not be reversed as being against the manifest weight of the evidence 'if the record contains

some competent, credible evidence from which the court could have found that the essential statutory elements for permanent custody had been established by clear and convincing evidence.'" *In re G.W.*, 8th Dist. Cuyahoga No. 107512, 2019-Ohio-1533, ¶ 62, quoting *In re A.P.*, 8th Dist. Cuyahoga No. 104130, 2016-Ohio-5849, ¶ 16. "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 20} With respect to the first prong of the permanent-custody analysis, the juvenile court found, pursuant to R.C. 2151.414(B)(1)(a), that the children were neither abandoned nor orphaned, but they could not be placed with either parent within a reasonable time or should not be placed with their parents.

### C. Whether J.H. Could Not Be Placed With Father Within a Reasonable Time or Should Not be Placed With Father

{¶ 21} R.C. 2151.414(E) provides a list of factors the court must consider in determining whether or not children can be placed with a parent within a reasonable time. If the juvenile court finds, by clear and convincing evidence, that at least one of these enumerated factors exists as to each of the child's parents, the juvenile court must find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E).

{¶ 22} The juvenile court found that J.H. and A.T. could not be placed with either parent within a reasonable time or should not be placed with either parent,

pursuant to R.C. 2151.414(E)(1), (E)(4), (E)(14), and (E)(16), but specifically indicated that the children could not be placed with Father due to the factors listed in R.C. 2151.515(E)(4), (E)(14), and (E)(16).

{¶ 23} R.C. 2151.414(E)(4) provides that the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if it finds that

> [t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child[.]

{¶ 24} Prior to his incarceration, Father made no effort to regain custody of his children. McKether testified that although the agency was prepared to work with Father to remedy the conditions that led to the children's removal, he "did not make himself available to the Agency" before he was incarcerated. (May 19, 2022, tr. 36.) Although McAnerney sent case plans to Father in prison, he never responded or initiated contact with the agency even though the case plans provided the agency's contact information. McAnerney stated that "[t]he parents need to take some initiative." (May 19, 2022, tr. 94-95.) Father admitted on cross-examination that he made no attempt to contact the agency while he was in prison even though he had "money on [his] phone." (May 19, 2022, tr. 118-119.) Therefore, the record supports the juvenile court's finding that Father demonstrated a lack of commitment to the children by failing to contact the agency and by failing to do whatever was necessary to regain custody of them.

{¶ 25} The juvenile court also found that Father was unwilling to provide basic necessities for the children pursuant to R.C. 2151.414(E)(14). R.C. 2151.414(E)(14) provides that the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent if it finds that

> [t]he parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

{¶ 26} There is no evidence that Father made any effort to provide any of the necessities his children require before he was incarcerated. Although McKether attempted to work with Father while he was a resident at Oriana House, a drug treatment facility, he "went AWOL." (May 19, 2022, tr. 38.) And, as previously stated, Father made no effort from prison to work with the agency to do the work necessary to claim custody of the children. He completely neglected them. Therefore, the trial court's finding that Father was unwilling to provide basic necessities for J.H. pursuant to R.C. 2151.414(E)(14) is supported by the evidence.

{¶ 27} Finally, the juvenile court found that the children could not be returned to Father within a reasonable time pursuant to R.C. 2151.414(E)(16), which allows the court to consider "[a]ny other factor the court considers relevant." With respect to this factor, the court noted that Father was incarcerated. He, therefore, had no visits with the children during his period of incarceration, and the record is also devoid of any evidence that Father visited the children prior to his incarceration.

Indeed, there was a no-contact order that prohibited him from visiting with A.T., and there is no evidence that Father ever visited with J.H. (May 19, 2022, tr. 38-39.) Therefore, the trial court's finding that the children could not be placed with Father within a reasonable time is supported by the manifest weight of the evidence.

## D. Best Interest of the Child

{¶ 28} Having determined that the children could not be placed with either parent within a reasonable time, we now turn to the second prong of our analysis, which requires the court to determine, by clear and convincing evidence, whether it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 29} We recognize that, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned, the juvenile court enjoys broad discretion in determining whether an order of permanent custody is in the child's best interest. *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994). We, therefore, review a juvenile court's determination of a child's best interests under R.C. 2151.414(D) for abuse of discretion. *In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618, ¶ 47.

{¶ 30} An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the

legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

{¶ 31} This court has held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 32} In determining the best interest of the child, R.C. 2151.414(D) requires the court to consider all relevant factors, including but not limited to (1) the interaction and interrelationship of the child with the child's parents, sibling, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 33} Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover,

only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 8th Dist. Cuyahoga No. 102350, 2015-Ohio-2410, ¶ 30.

{¶ 34} Since Father failed to visit either child, there is no evidence of a bond between Father and either of his children. Yet, the evidence shows that both children are closely bonded with each other and all the members of their foster family. The evidence also established that A.T. has been living in temporary custody since she was three months old and J.H. had been in temporary custody and living with the foster family for his entire life. Thus, the first and third factors weigh strongly in favor of permanent custody.

{¶ 35} J.H. was 18 months old and A.T. was three and-one-half years old at the time of trial. They, therefore, could not express their own wishes regarding custody. However, the GAL stated that permanent custody was in the best interest of both children and that they would be in danger if Father regained custody of them. The GAL stated in his report: "[T]he Father is a danger to the children in my view, physically and emotionally, and an inappropriate caregiver." Therefore, this factor also weighs in favor of permanent custody.

{¶ 36} Although J.H. had not been in temporary custody for 12 or more months of a consecutive 22-month period, the evidence showed that Father was unable to care for him within a reasonable time due to his incarceration and failure to complete any case plan objectives. And, A.T. had been in custody for over three years. Therefore, both children needed a permanent placement that could only be

achieved by an order granting permanent custody to the agency. Therefore, clear and convincing evidence supports the juvenile court's determination that permanent custody was in the children's best interest.

{¶ 37} The sole assignment of error is overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
MARY EILEEN KILBANE, J., CONCUR