[Cite as *In re Z.B.*, 2025-Ohio-4594.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE Z.B.                                          :

A Minor Child                                       :                    No. 115115

[Appeal by M.B., Mother]                            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 2, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22905476

---

### *Appearances:*

Sylvester Summers, Jr.,  Co., LPA and Sylvester Summers,
Jr., *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

ANITA LASTER MAYS, J.:

**{¶ 1}** Appellant M.B. ("Mother") appeals the judgment of the Cuyahoga County Juvenile Court granting permanent custody of her minor child, Z.B., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency").  For the reasons that follow, we affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

{¶ 2}   In May 2022, just one day after Z.B.'s birth, CCDCFS filed a complaint for emergency custody, alleging the child was dependent.  CCDCFS cited Mother's extensive and chronic history with the agency that dated back to 2015.  Mother had an open case concerning her four other children because of unresolved issues with mental health, housing, and parenting.  In this instance, Mother threatened to take Z.B. from the hospital despite being unable to meet the newborn's basic needs.

{¶ 3}   After the initial removal, the agency included Z.B. in Mother's existing case plan, which included housing, mental-health treatment, and parenting classes.  Mother completed some services, and in October 2022, Z.B. was briefly placed back in Mother's care under an order of protective supervision.

{¶ 4}   In November 2023, the agency filed a motion to modify protective supervision to temporary custody alleging that Mother ceased cooperating with the agency and an inspection of her home revealed unsanitary and unsafe conditions.  The agency claimed there was an "overflowing litter box," a vape pen, and chemicals within the child's reach.  Moreover, the home lacked appropriate food, had a bug issue, and Z.B. slept on a dirty mattress on the floor.  Z.B. was again removed from Mother's care and remained in the continuous custody of CCDCFS.

{¶ 5}   On July 30, 2024, CCDCFS filed a motion for permanent custody.  The trial was held on April 22, 2025.  The court heard testimony from Sarah Smith, the CCDCFS social worker; Mother's therapist, Daniella Lachina; and the child's guardian ad litem ("GAL"), Patrick Lavelle.  Mother also testified. The trial court

ultimately granted the motion, terminated Mother's parental rights, and committed the child to the permanent custody of CCDCFS. Mother now appeals, raising one assignment of error.

## II. ASSIGNMENT OF ERROR

> The trial court erred in awarding permanent custody to CCDCFS when it failed to show by clear and convincing evidence that adequate grounds existed for a grant of permanent custody and therefore such decision was contrary to the manifest weight of the evidence.

## III. LAW AND ANALYSIS

{¶ 6} Our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody is taken very seriously. Ohio courts have long recognized that termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re D.A.*, 2007-Ohio-1105, ¶ 10. Parents have a constitutionally protected, fundamental interest in the management, custody, and care of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000). The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 7} "[T]he proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-

evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 18. When reviewing for manifest weight, the appellate court weighs and resolves conflicts in the evidence, considers witness credibility, and determines whether the factfinder clearly lost its way, resulting in a manifest miscarriage of justice. *In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 8} R.C. 2151.414(B)(1) outlines the two-prong test a trial court must perform before granting an agency's motion for permanent custody of a child. The statute requires the court to determine, by clear and convincing evidence, both: (1) that at least one of the conditions outlined in R.C. 2151.414(B)(1)(a) through (e) applies; and (2) that an award of permanent custody is in the child's best interest. *In re A.M.*, 2020-Ohio-5102 ¶ 18; *In re C.F.* 2007-Ohio-1104, ¶ 22.

{¶ 9} Regarding the first prong, R.C. 2151.414(B)(1) states in relevant part:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 10} In the instant case, Mother challenges the trial court's finding only under R.C. 2151.414(B)(1)(a), that Z.B. could not or should not be placed with either parent within a reasonable time. Mother argues that she complied with her case plan, required only additional time to remedy concerns, and that the court erred in concluding that she failed to correct the conditions leading to removal. We disagree.

{¶ 11} The trial court's findings under R.C. 2151.414(B)(1)(a) are supported by clear and convincing evidence. Furthermore, the record contains no clear and convincing evidence that either parent could provide adequate care for Z.B.'s health, welfare, and safety. First, Z.B.'s father established paternity but never participated in the case plan. He failed to engage in services and did not visit the child during her life. Z.B.'s father does not challenge the trial court's judgment here.

{¶ 12} Mother, however, points to progress she made under the case plan. She completed a parenting class and participated in therapy through Ohio

Guidestone. Nonetheless, she failed to demonstrate sustained progress in addressing the issues that led to Z.B.'s removal.

{¶ 13} The social worker testified that the home remained unsafe and that Mother's fiancé never submitted to a background check. More concerning, Mother minimized Z.B.'s developmental delays and failed to attend the child's appointments addressing those concerns. The record reflects clear and convincing evidence that Mother failed continuously and repeatedly to remedy the conditions causing removal. Z.B. remained in agency custody for more than 12 of 22 continuous months, and the agency was granted permanent custody of four other children. Accordingly, the trial court did not err in finding that Z.B. could not or should not be placed with either parent within a reasonable time.

{¶ 14} We note that a finding under any one subsection of R.C. 2151.414(B)(1) is sufficient to meet the first prong of the permanent-custody test. Here, the trial court made findings that also satisfy R.C. 2151.414(B)(1)(d) and (e). Z.B. had been in the temporary custody of CCDCFS for twelve or more months of a consecutive twenty-two-month period, and Z.B.'s four siblings had previously been permanently removed from Mother's custody. Thus, even if Mother's challenge to the trial court's findings under R.C. 2151.414(B)(1)(a) had merit, the record contains clear and convincing evidence under (d) and (e) to independently support the trial court's findings. The trial court's conclusion that the first prong of the permanent custody test had been met is not against the manifest weight of the evidence.

**{¶ 15}** Mother also challenges the best-interest determination under R.C. 2151.414(D)(1), arguing that the court's findings were against the manifest weight of the evidence because she was bonded with her child, had stable housing, employment, daycare, and completed services. The second prong requires the court to determine whether permanent custody is in Z.B.'s best interest. R.C. 2151.414(D)(1) requires the trial court to consider all relevant factors when making this determination, including: (a) the interaction of the child with parents and caregivers; (b) the wishes of the child; (c) the child's custodial history; (d) the child's need for a legally secure placement; and (e) whether any factors in R.C. 2151.414(E)(7)-(11) apply. The trial court is mandated to consider each factor. However, the court is not required to make written findings regarding each factor. *In re A.M.,* 2020-Ohio-5102, ¶ 31.

**{¶ 16}** Nonetheless, the record demonstrates that the trial court considered the statutory factors. The evidence reflects that Mother and Z.B. share a bond and that their visits were generally positive. However, Mother consistently disputed the agency's concerns regarding the condition of the home, asserting during her testimony that "the agency was lying" about her circumstances. Despite the court's order of protective supervision, Mother refused to cooperate with CCDCFS, including her refusal to facilitate a background check for her live-in boyfriend, who resided in the household and could have had daily access to Z.B. Mother also testified that she planned to rely on her boyfriend for childcare, yet his refusal to comply with the background check left the agency and the court unable to determine

whether such an arrangement would be safe or appropriate. Moreover, Mother failed to remedy the unsafe and unsanitary conditions that prompted Z.B.'s second removal. The social worker testified that after obtaining a court order to access the home, she observed the home to be filthy, lacked appropriate food, and had no appropriate place for Z.B. to sleep. Additionally, an overflowing litter box, chemicals, and a vape pen were within Z.B.'s reach. Z.B. was too young to express her wishes; however, the GAL recommended permanent custody to CCDCFS. The GAL testified that when appointments were scheduled at Mother's convenience, Mother nonetheless failed to cooperate and, on one occasion, someone inside the home refused to open the door. The GAL's testimony corroborated the agency's concerns and reinforced the conclusion that the environment was unsuitable for a young child. Regarding custodial history, Z.B. had been removed from Mother's care twice and remained in the agency's continuous custody for more than 12 of 22 months.

{¶ 17} Additionally, R.C. 2151.414(E)(11) applies because Mother previously lost permanent custody of Z.B.'s four siblings because of similar unresolved issues. The record demonstrates that Z.B.'s need for a legally secure placement could not be achieved with Mother, given ongoing concerns regarding housing, mental health, and stability.

{¶ 18} Upon review of the record, we find clear and convincing evidence that Z.B. should not or could not be placed with either parent within a reasonable time and the trial court's award of permanent custody to the agency was in Z.B.'s best

interest. We cannot conclude that the trial court's findings regarding the first and second prongs were against the manifest weight of the evidence. Mother's assignment of error is overruled.

**{¶ 19}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR