JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, T.M., [1] ("Mother"), appeals the trial court's decision to grant permanent custody of her two children to the Cuyahoga County Department of Children and Family Services ("the agency"). After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} The facts that led to this appeal began on May 11, 2006, when Mother gave birth to twins, Baby Boy M. and Baby Girl M. ("the children"). On the day she gave birth, Mother and the children tested positive for cocaine. On May 22, 2006, the children were placed into emergency custody with the agency, and the agency filed a complaint requesting temporary custody alleging abuse and neglect. On May 23, 2006, the juvenile court ordered the children into pre-dispositional temporary custody and scheduled a hearing on the motion for temporary custody.
 {¶ 3} On July 17, 2006, the trial court held a hearing and granted the agency temporary custody after it adjudged the children abused and neglected. At the hearing, evidence showed that Mother continued to have a drug problem and that she had not sought treatment; she did not have housing and had been *Page 2 
living in a shelter; and she has five other children, all of whom live with other family members.
 {¶ 4} On April 18, 2007, the agency filed a motion for permanent custody because Mother still had no permanent housing, was still addicted to drugs, and had not even named the children. In the motion, the agency alleged that Mother had consistently and repeatedly failed to substantially remedy the conditions that caused the children to be placed outside the home.
 {¶ 5} On March 14, 2008, the trial court held a hearing on the motion for permanent custody. Social workers, Earl Thomas and Charlene Hill, and foster mother, A.W., testified. Mr. Thomas testified regarding Mother's case plan objectives that included substance abuse assessment and treatment, parenting education, obtaining stable housing, providing a safe environment for the children, and providing support for basic needs. According to Mr. Thomas, the agency filed for permanent custody because mother failed to participate in the case plan.
 {¶ 6} Mr. Thomas also testified about Mother's recent attempts at participating in the case plan, which included obtaining housing, participating in drug treatment, and parenting classes. According to Mr. Thomas, Mother completed parenting classes in December 2006, but attempted and accomplished the other items only after the agency had moved for permanent custody. He *Page 3 
testified that a child can remain in temporary custody for only two years. Mr. Thomas also stated that the children could be placed with Mother "maybe in a reasonable amount of time. But I mean it would probably take some time. * * * As long as she could do it. But, * * * there's some time in between there."
 {¶ 7} Despite Mother's advancements, Mr. Thomas was skeptical about whether she could have overcome her drug problem in only two months (in treatment from December 2007 to January 2008). The agency ordinarily requires six months of sobriety. Mr. Thomas also stated that, although Mother obtained housing, she had done so only a month prior and had no furniture for the children. Mr. Thomas felt that the children were thriving with their foster family and that it would be traumatic to remove them.
 {¶ 8} The foster mother testified that she has raised the children since birth. She stated that the children refer to her as "mommy" and to her sister as "auntie." She is employed, owns her home, and has provided foster care for other children in the past. She testified that the children visited Mother once a week. She explained that, when the children were three months old, she discovered that Mother had been feeding them Cheetos and soda during visits. She asked Mother to stop feeding the children junk food, but Mother continued to do so. Mother has sent the foster mother clothing and stuffed animals for the children; however, according to the foster mother, the clothes were usually the wrong size, *Page 4 
out of season, or stained. The first time Mother had asked for pictures of the children was right before the permanent custody hearing.
 {¶ 9} The foster mother further testified that both children had medical problems after birth. Baby Boy had a skull deformity that required him to wear a helmet, and Baby Girl had a "strawberry patch" on her thigh and forehead. Mother did not participate in the medical treatment process. Finally, the foster mother testified that she would like to adopt the children.
 {¶ 10} Ms. Hill testified that, although Mother had recently completed parts of the case plan, she did not know whether the children could be placed with Mother within a reasonable time. According to Ms. Hill, paternity had not been established, and the alleged father failed to participate in the case plan. She also testified that if Mother was living with the alleged father, the children could not be placed in her home.
 {¶ 11} The guardian ad litem's report indicated that relatives could not take the children because they were currently caring for Mother's five other children. She recommended that the trial court grant the agency's motion for permanent custody.
 Review and Analysis *Page 5 {¶ 12} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. In re Murray (1990),52 Ohio St.3d 155, 156, 556 N.E.2d 1169. However, a parent's right is not absolute. "The natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed." In re Cunningham (1979), 59 Ohio St.2d 100,106, 391 N.E.2d 1034, 1038. Consequently, the state may terminate parental rights when the child's best interest demands it.
 {¶ 13} "If the record shows some competent, credible evidence supporting the trial court's grant of permanent custody to the county, we must affirm that court's decision, regardless of the weight we might have chosen to put on the evidence." In re P.R., Cuyahoga App. No. 79609, 2002-Ohio-2029, at ¶ 15.
 {¶ 14} The standard of proof to be used by the trial court when conducting permanent custody proceedings is clear and convincing evidence. R.C. 2151.414(B)(1). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118. *Page 6 
 {¶ 15} It is well established that when some competent, credible evidence exists to support the judgment rendered by the trial court, an appellate court may not overturn that decision unless it is against the manifest weight of the evidence. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 16} The discretion that a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. In re Satterwhite, Cuyahoga App. No. 77071, 2001-Ohio-4137. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections, and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey (1952), 158 Ohio St. 9, 13,106 N.E.2d 772. As the Ohio Supreme Court has stated, "it is for the trial court to resolve disputes of fact and weigh the testimony and credibility of the witnesses." Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23,550 N.E.2d 178.
 {¶ 17} The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, *Page 7 
arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 18} Mother brings this appeal, asserting three assignments of error for our review.
 I. and II. {¶ 19} "I. The trial court erred in terminating parental rights since the children had not been in temporary custody of the agency for 12 months prior to the filing of its motion for permanent custody and the evidence established that the children could be returned to the mother within a reasonable time."
 {¶ 20} "II. The trial court abused its discretion in awarding permanent custody to CCDCFS because the award is against the manifest weight of the evidence and is not supported by clear and convincing evidence."
 {¶ 21} Within these assignments of error, the crux of mother's argument is that the trial court erred when it awarded permanent custody to the agency. More specifically, she alleges the children had not been in the agency's temporary custody for 12 months prior to the motion for permanent custody; the evidence shows that the children could be returned to mother within a reasonable time; and permanent custody was not in the children's best interest. These arguments are without merit. *Page 8 
 {¶ 22} The trial court must satisfy two requirements before ordering that a child be placed in the permanent custody of the agency. First, the court must find that the child cannot be placed with one of his parents within a reasonable amount of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a); 2151.414(E). Second, the trial court must determine that the placement is in the child's best interest. R.C. 2151.414(D).
 12-Month Temporary Custody Period {¶ 23} We first address Mother's contention that the agency failed to wait "the mandatory 12-month period before moving for permanent custody." In support of her contention she cites In re C.W.,104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176. According to the Ohio Supreme Court, "before [the agency] can move for permanent custody of a child on R.C. 2151.414(B)(1)(d) grounds, the child must have been in the temporary custody of [the] agency for at least 12 months of a consecutive 22-month period." Id. at ¶ 26.
 {¶ 24} We find that the holding in C.W. is inapplicable here because, in the case at bar, the motion for permanent custody was based on R.C. 2151.414(B)(1)(a), not R.C. 2151.414(B)(1)(d). In fact, the Court inC.W. went on to hold that "our holding does not preclude an agency from moving for permanent custody before a child has been in the agency's temporary custody for at least 12 months. If a ground other than R.C. 2151.414(B)(1)(d) exists to support a grant of permanent custody, the agency may move for permanent *Page 9 
custody on that other ground." Id. at ¶ 27. Accordingly, we find that the agency was not required to wait 12 months before filing its motion for permanent custody.
 Statutory Requirements for Permanent Custody {¶ 25} The trial court must satisfy two requirements before ordering that a child be placed in the permanent custody of a children's services agency. First, the court must find that one of the four conditions under R.C. 2151.414(B)(1) exists by clear and convincing evidence. Here, the trial court found that the condition under R.C. 2151.414(B)(1)(a) existed by clear and convincing evidence.
 {¶ 26} Under R.C. 2151.414(B)(1)(a), "the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * * the child is not abandoned or orphaned, [or] has not been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive twenty-two-month period, * * * and the childcannot be placed with either of the child's parents within a reasonabletime or should not be placed with the child's parents." (Emphasis added.) *Page 10 
 {¶ 27} The court made findings under R.C. 2151.414(E), which support the determination that the children "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). See In re K. K.H., Cuyahoga App. No. 83410, 2004-Ohio-4629.
 {¶ 28} Under R.C. 2151.414(E), "in determining * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines by clear and convincing evidence * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."
 {¶ 29} If the court determines, by clear and convincing evidence, that one or more of 16 factors under R.C. 2151.414(E) exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In re Hauserman (Feb. 3, 2000), Cuyahoga App. No. 75831. The trial court is only required to consider these factors, and only one factor needs to be resolved in favor of permanent custody.
 {¶ 30} Here, the trial court found that several of the factors under R.C. 2151.414(E) had been met. The court found that the parents failed to *Page 11 
substantially remedy the conditions causing the children to be placed outside the home (R.C. 2151.414(E)(1)); the parents demonstrate a lack of commitment by failing to regularly support, visit, or communicate with the children, or by showing an unwillingness to provide a permanent home (R.C. 2151.414(E)(4)); the parents have abused or neglected the children and the likelihood of recurrence makes placement with the parents a threat to the children's safety (R.C. 2151.414(E)(15)); and the father is unwilling to provide food, clothing, and shelter as evidenced by his unwillingness to complete a case plan (R.C. 2151.414(E)(14)).
 {¶ 31} We find that the trial court's determination that the children could not be placed with Mother within a reasonable time was not against the manifest weight of the evidence. The trial court need only find one factor met under R.C. 2151.414(E), but actually found several. There was more than sufficient evidence of the first factor alone. The parents have failed to substantially remedy the conditions. According to Mr. Thomas, although Mother had participated in the case plan (albeit late), there were still serious concerns about her housing and drug addiction. She had housing, but no furniture, and she had only been sober for two months. According to Mr. Thomas, the agency prefers six months of sobriety, and he found it hard to believe anyone could overcome a years-long drug habit in only two months. *Page 12 
 {¶ 32} Mr. Thomas also explained that there could be no extension of temporary custody because the children had already been in custody for the two-year maximum. See R.C. 2151.415(C)(4). According to Mr. Thomas, returning children to a parent who has only been sober for two months can cause serious stress leading to a relapse. Further, Ms. Hill testified that she thought Mother was living with the alleged father, which caused concern because alleged father refused to participate in the case plan.
 {¶ 33} We recognize that Mother has recently attempted to improve her life in order to provide for her children; however, the last-minute nature of her efforts demonstrates a lack of commitment. Additionally, the improvements are still below the standards required by the agency. Accordingly, after a review of the evidence, we find that the trial court's finding that the children could not be placed with Mother within a reasonable time is supported by the manifest weight of the evidence.
 {¶ 34} Having found that the trial court properly determined that one of the R.C. 2151.414(B)(1) conditions was met, we now must determine whether the trial court appropriately determined, by clear and convincing evidence, that permanent custody is in the best interest of the children by considering all relevant factors, including those listed in R.C. 2151.414(D). *Page 13 
 {¶ 35} In determining the best interest of a child, a trial court is to consider all relevant factors including, but not limited to, the five under R.C. 2151.414(D). The factors include, "the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers; the wishes of the child; the custodial history of the child; the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D). The factors under R.C. 2151.414(E)(7) through R.C. 2151.414(E)(11) do not apply here.
 {¶ 36} The evidence at trial showed that the children had positive interactions with their foster family, including calling them "mommy" and "auntie." However, the children had negative interactions with Mother when she failed to name them, fed them inappropriate food, provided inappropriate clothing, and took no interest in their medical problems or even in obtaining photographs of them. Further, there was no possibility of maternal family members taking the children.
 {¶ 37} The children are too young to express their wishes, but the guardian ad litem reported that she believed permanent custody was in the best interest of the children. The children had been in temporary custody over 12 months at *Page 14 
the time of the permanent custody hearing. Additional extensions of temporary custody were not available because the children had been in temporary custody for almost two years. Finally, Mr. Thomas testified that a planned permanent living arrangement was inappropriate because the children were thriving in the foster home.
 {¶ 38} We find that the trial court appropriately determined that permanent custody was in the best interest of the children. Accordingly, Mother's first and second assignments of error are without merit.
 III. {¶ 39} "III. The trial court erred in terminating parental rights where the agency failed to make reasonable efforts to prevent removal of the child from the child's home."
 {¶ 40} Mother argues that the trial court erred when it granted permanent custody to the agency without making reasonable efforts to prevent removal of the children from their home, as required by R.C. 2151.419. This argument is without merit. *Page 15 
 {¶ 41} The Ohio Supreme Court has recently addressed this issue inIn re C.F., 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, at¶ 41, stating, "by its terms, R.C. 2151.419 applies only at hearings held pursuant to R.C. 2151.28, 2151.31(E), 2151.314, 2151.33 or2151.353. See R.C. 2151.419(A)(1). * * * The statute makes no reference to a hearing on a motion for permanent custody." Id. Therefore, because it was ruling on a motion for permanent custody, we find that the trial court did not need to make a reasonable efforts determination. Accordingly, Mother's third assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., JUDGE
KENNETH A. ROCCO, P.J., and MELODY J. STEWART, J., CONCUR
[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases. *Page 1