[Cite as *In re KY.D.*, 2024-Ohio-3198.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE KY.D., ET AL.         :

Minor Children         :

[Appeal by A.D., Mother]         :

:         No. 113615

: 

:

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 22, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21910539 and AD23911521

---

### *Appearances:*

Law Office of Victor O. Chukwudelunzu, LLC, and Victor Chukwudelunzu, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Corbin Finkenthal, Assistant Prosecuting Attorney, *for appellee.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Appellant A.D., the mother of Kh.D. and Ky.D. ("Mother"), appeals the judgment of the Cuyahoga County Juvenile Court terminating her parental rights and awarding custody of both children to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency"). After a thorough review of the applicable law and facts, we affirm the judgment of the juvenile court.

# I. Factual and Procedural History

{¶ 2} This matter commenced in November 2021 when CCDCFS filed a complaint alleging Kh.D. (d.o.b. 8-11-06), Ky.D. (d.o.b. 4-2-08), and a third sibling who is not party to this appeal were abused, neglected, and dependent following a physical altercation between Mother and Kh.D. The complaint requested a disposition of temporary custody to the agency.

{¶ 3} Following a hearing, the court granted predispositional custody to CCDCFS. A case plan was developed to assist Mother in addressing issues with parenting, anger management, family preservation, and mental health services.

{¶ 4} Mother[1] stipulated to an amended complaint and agreed to the disposition of temporary custody of the children to the agency. The children were then adjudicated neglected and dependent and placed in CCDCFS custody. Kh.D. was later reunified with Mother, but Ky.D. remained in agency custody.

{¶ 5} In June 2022, the court held an in camera hearing with the children. In January 2023, the agency filed a motion to modify temporary custody to permanent custody regarding Ky.D.

{¶ 6} After reunification between Mother and Kh.D., there was additional conflict, and the agency filed another complaint in October 2023 asking Kh.D. to be adjudicated neglected and dependent and seeking permanent custody. The agency also moved for permanent custody of Ky.D.

---

[1] The father of Kh.D. and Ky.D. is not a party to this appeal. He is currently incarcerated and not eligible for parole until 2042.

{¶ 7} The court held another in camera hearing with both children in December 2023 and discussed the current living situation with the foster family and the children's wishes regarding reunification with Mother.

{¶ 8} Later that month, the juvenile court held an adjudicatory hearing regarding Kh.D. The agency presented the testimony of the case worker, LaGina White, who testified that Mother was unable to resolve conflicts between herself and the children and that Mother had failed to address Kh.D.'s mental health issues.

{¶ 9} Kh.D. was adjudicated neglected and dependent, and the juvenile court immediately held a hearing on the request for permanent custody of both children. White again testified on behalf of the agency. She outlined Mother's case-plan objectives, which were housing, mental health, individual counseling, family counseling, and anger management. White acknowledged that Mother had made improvements with regard to the housing concerns in that she obtained housing that had appropriate space for the children.

{¶ 10} White further testified that Mother did not complete her anger management classes, which related to her excessive discipline of the children and aggressive outbursts. White had witnessed some of these outbursts where Mother had become aggressive and argumentative when discussing the children and visitation.

{¶ 11} According to White, family counseling had been made part of the case plan because there was a great deal of parent–teen conflict. The children had stated that Mother gets angry with them, is verbally aggressive, and does not listen to them.

They revealed that they do not want to have contact with her and have blocked her telephone number from calling their cell phones and blocked her from contacting them through social media. White testified that the children did not want to participate in family counseling with Mother and insisted that White refer to Mother by her first name and not as their mother.

{¶ 12} The agency had implemented a schedule for supervised visitation. White testified that she had been on the case since August 2023 and that the children had not had any visits with Mother since she had been assigned the case. White acknowledged that Mother was willing to participate in family counseling but had not participated because the children had refused. White stated that Mother was committed to rebuilding a relationship with the children but had not demonstrated the ability to do so.

{¶ 13} White further testified that the children were in foster care and were thriving. They were doing well in school and were employed. They were working on daily living skills and were being taught how to save some of their earnings. They were also engaged in individual counseling.

{¶ 14} With regard to the children returning home, White testified that Kh.D. had stated that if she were returned home she would "immediately run away or go AWOL." Kh.D. had also stated that she did not want to be adopted but wanted to remain in the foster home. Ky.D. did not want to live with Mother and wished to be adopted. The foster parents were willing to keep the children and assist Kh.D. in

working toward her independent living goals and support her after she is emancipated.

{¶ 15} White concluded that it was in the best interest of the children to remain with the foster family and that Mother had not remedied the conditions that led to the initial removal of the children. White further noted that Mother had a pending case for felonious assault.

{¶ 16} On cross-examination, White stated that family counseling had not occurred because the children had refused to participate. She explained that the children were of an appropriate age that they were permitted to refuse. White acknowledged that the same policy existed with regard to visitation. She reminded the children that visitation was part of the case plan and asked them if they would like to engage in visitation and offered alternatives to in-person visits, such as visits over FaceTime or Zoom. The children declined any visitation.

{¶ 17} White was also asked on cross-examination about how the children described the differences between living with Mother and living in the foster home and stated as follows:

> [Ky.D.] stated that there was constant fighting between [Kh.D.] and [Mother] and that she often felt that she was in the middle of that. It was — And that it was very stressful for her. She didn't want to be in the middle. She didn't want to be involved. And she doesn't have that in the current placement with the foster care. She looks at the other children that are in the home as her siblings and the foster parents as her parents.
>
> . . .

[Kh.D.] just said that she was — that she was over it. She was tired of the back and forth with [Mother], tired of the arguing. And she also stated that she believes with her diagnosis that she acts just like her mother and that's why she needs counseling and why she wants to be away from her.

December 18, 2023 dispositional hearing, p. 71-72.

{¶ 18} Mother presented the testimony of Kellee Woodford, a therapist with Ohio Guidestone. Mother has been Woodford's patient since 2020. Woodford testified that Mother suffers from generalized anxiety disorder and post-traumatic stress disorder. Woodford maintained that Mother was making some progress in therapy and was working on her coping skills.

{¶ 19} The court also heard from the children's guardian ad litem ("GAL") who recommended that permanent custody of the children be awarded to the agency. He stated that the children had been consistent for the past six months about not wanting to return home. Counsel for the children also related that they both wished to be committed to the permanent custody of CCDCFS.

{¶ 20} The trial court granted permanent custody of both children to the agency and terminated Mother's parental rights, finding that (1) Mother had continuously and repeatedly failed to substantially remedy the conditions causing Kh.D. to be placed outside the home; (2) Ky.D. had been in temporary custody of the agency for twelve or more months of a consecutive 22-month period; and (3) the children's continued residence or return to Mother's home would be contrary to their best interest.

{¶ 21} Mother then filed the instant appeal, raising three assignments of error for our review:

> 1. The juvenile court's ruling granting permanent custody of Ky.D., and Kh.D to CCDCFS was against the manifest weight of the evidence.
>
> 2. The juvenile court's ruling granting permanent custody of Ky.D. and Kh.D. to CCDCFS was in error, because appellee did not show that it made "reasonable efforts" to reunite the family pursuant to R.C. 2151.419.
>
> 3. The juvenile court's ruling granting permanent custody of Ky.D. and Kh.D to CCDCFS and terminating Mother's parental rights violated state law and Mother's right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution and Section 16, Article I of the Ohio Constitution.

## II. Law and Analysis

{¶ 22} The right to raise one's own child is "'an essential and basic civil right.'" *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997); *see also In re Murray*, 52 Ohio St.3d 155, 156 (1990), quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (a parent has a "'fundamental liberty interest' in the care, custody, and management" of his or her child). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 23} Because termination of parental rights is "'the family law equivalent of the death penalty in a criminal case,'" *In re J.B.*, 2013-Ohio-1704, ¶ 66 (8th Dist.), quoting *In re Hoffman*, 2002-Ohio-5368, ¶ 14, it is "an alternative [of] last resort." *In re Gill*, 2002-Ohio-3242, ¶ 21 (8th Dist.). It is, however, "sanctioned when

necessary for the welfare of a child." *In re M.S.*, 2015-Ohio-1028, ¶ 7 (8th Dist.), citing *In re Wise*, 96 Ohio App.3d 619 (9th Dist. 1994). "'All children have the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.* at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102 (8th Dist. 1996). Where parental rights are terminated, the goal is to create "a more stable life for the dependent children" and to "facilitate adoption to foster permanency for children." *In re N.B.* at ¶ 67, citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

{¶ 24} The Supreme Court of Ohio has stated that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 11.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining

the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

{¶ 25} While sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. *In re P.S.*, 2023-Ohio-144, ¶ 30 (8th Dist.), citing *In re C.N.*, 2015-Ohio-2546, ¶ 9 (10th Dist.), citing *State v. Howze*, 2013-Ohio-4800, ¶ 10 (10th Dist.).

### A. Manifest Weight

{¶ 26} In her first assignment of error, Mother argues that the trial court's granting of permanent custody to the agency was against the manifest weight of the evidence.

{¶ 27} An agency may obtain permanent custody of a child in two ways. *In re E.P.*, 2010-Ohio-2761, ¶ 22 (12th Dist.). An agency may first obtain temporary custody of the child and then file a motion for permanent custody under R.C. 2151.413, or an agency may request permanent custody as part of its original abuse, neglect, or dependency complaint under R.C. 2151.353(A)(4).

{¶ 28} Here, the agency obtained temporary custody of Ky.D. and then filed a motion for permanent custody under R.C. 2151.413. As to Kh.D., the agency requested permanent custody pursuant to R.C. 2151.353(A)(4) as part of its original complaint. Because the agency sought permanent custody for the children pursuant

to two different statutes, two different statutory analyses apply to determine whether permanent custody to the agency was supported by the evidence.

{¶ 29} For a motion for permanent custody sought under R.C. 2151.413, such as the motion filed for Ky.D., a juvenile court must satisfy the two-prong test set forth in R.C. 2151.414 before it can terminate parental rights and grant permanent custody to the agency. The juvenile court must find by clear and convincing evidence that any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e) apply and that it is in the best interest of the child to grant permanent custody to the agency. *In re R.G.*, 2020-Ohio-3032, ¶ 19-20 (8th Dist.).

{¶ 30} The agency's motion for permanent custody of Kh.D. was filed pursuant to R.C. 2151.353(A)(4) and represents a complaint with an original dispositional request for permanent custody. Under such a scenario, the trial court must find "in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent," and further must determine "in accordance with division (D)(1) of section 2151.414 of the Revised Code that the permanent commitment is in the best interest of the child." R.C. 2151.353(A)(4).

{¶ 31} We examine the record to determine whether the juvenile court had sufficient evidence to meet the required degree of proof. "Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *In re L.W.*, 2019-

Ohio-1343, ¶ 24 (8th Dist.), citing *In re T.S.*, 2009-Ohio-5496, ¶ 24 (8th Dist.), citing *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990).

{¶ 32} As part of its original complaint, the agency requested permanent custody of Kh.D. pursuant to R.C. 2151.353(A)(4). The trial court needed to satisfy two statutory requirements before ordering Kh.D.'s placement in the permanent custody of the agency: find that (1) the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent in accordance with R.C. 2151.414(E) and (2) the permanent commitment is in the child's best interest, in accordance with R.C. 2151.414(D)(1). R.C. 2151.353(A)(4).

{¶ 33} With regard to Ky.D., the juvenile court was required to find by clear and convincing evidence that one of the following conditions set forth in R.C. 2151.414(B)(1)(a) through (e) existed:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 34} Only one of the factors must be present for the first prong of the permanent custody analysis to be satisfied. *In re S.S.*, 2020-Ohio-3039, ¶ 28 (8th Dist.), citing *In re L.W*, 2017-Ohio-657, ¶ 28 (8th Dist.).

{¶ 35} In this matter, with regard to Ky.D., the juvenile court found that she had been in the custody of the agency for 12 or more months of a consecutive 22-month period. Mother does not appear to dispute this finding.

{¶ 36} The juvenile court further found that both children could not or should not be placed with either parent. When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.,* 2014-Ohio-5348, ¶ 58 (8th Dist.); *In re B.P.,* 2019-Ohio-2919, ¶ 13 (8th Dist.). A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.*, 2020-Ohio-579, ¶ 27 (8th Dist.), citing *In re V.C.*, 2015-Ohio-4991, ¶ 42 (8th Dist.).

{¶ 37} In this case, the juvenile court found that the children could not be placed with either parent within a reasonable time or should not be placed with Mother pursuant to the factor outlined in R.C. 2151.414(E)(1), which provides as follows:

> Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 38} Specifically, the court determined:

> There has been an inability to overcome the severe parent and teen conflict in this matter. Mother has participated in case plan services, has housing, and has been in individual counseling since 2020 and is working on challenges but has failed to demonstrate benefit to level to resolve her mental health challenges and coping skills. The severity of past experiences and trauma of both children have led to a complete refusal to engage in any family counseling with Mother and neither want visitation or a relationship with Mother.

{¶ 39} Finally, the court found that, with regard to Ky.D., the factor in 2151.414(E)(4) was applicable — that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

{¶ 40} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D). "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 2014-Ohio-2051, ¶ 28 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 41} Mother does not appear to challenge any of the findings related to the first prong for either child and instead focuses on the determination regarding the best interests of the children. In analyzing the best interest of a child at a hearing held pursuant to R.C. 2151.414(A)(1), the juvenile court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . .;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 42} Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent-custody determination, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.).

{¶ 43} With regard to the above factors, the court made the following findings (1) the children refer to their foster mother as "mother," have a strong bond with the foster family, and are doing well; (2) the GAL and children are in favor of permanent custody; (3) Mother has engaged in individual counseling but has failed to obtain enough benefit to resolve her mental health challenges and coping skills; and (4) the children do not want to engage in family counseling with Mother and neither want visitation or a relationship with her.

{¶ 44} We find that the court's findings related to the best interests of the children were supported by competent, credible evidence, and the factors weigh in favor of permanent custody. Mother's first assignment of error is overruled.

## B. Reasonable Efforts

{¶ 45} In her second assignment of error, Mother contends that the trial court erred by awarding permanent custody to the agency when CCDCFS did not demonstrate that it had made reasonable efforts to reunite the family. Specifically, Mother contends that the "central piece" of Mother's case plan services that would

have made it possible for the children to return home was family counseling. She argues that she was willing and eager to engage in family counseling but that the agency did not prepare the children for family counseling. Mother further asserts that the agency did not make reasonable efforts to return the children to her care or to place Kh.D. into a planned permanent living arrangement.

{¶ 46} R.C. 2151.419 pertains to a trial court's determination as to whether an agency made reasonable efforts to prevent removal or to return a child to the child's home. This court has held:

> R.C. 2151.419, which requires a trial court to determine whether a children services agency made reasonable efforts to prevent removal or to return a child to the child's home, applies only at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children."

*In re A.P.*, 2016-Ohio-5849, ¶ 13 (8th Dist.), quoting *In re C.F.*, 2007-Ohio-1104, ¶ 41.

{¶ 47} In *In re Baby Boy M.*, 2008-Ohio-5271 (8th Dist.), this court applied the Supreme Court of Ohio's holding in *In re C.F.* and held that the trial court did not need to make a reasonable-efforts determination because it was ruling on a motion for permanent custody. *Id.* at ¶ 41. *Accord In re A.P.* at ¶ 13; *In re L.D.*, 2017-Ohio-1037, at ¶ 19 (8th Dist.).

{¶ 48} The record reflects that the trial court did, in fact, make reasonable-efforts findings in its opinion. Specifically, the juvenile court stated that the agency made reasonable efforts to finalize a permanency plan for the children and to prevent the removal of the children from the home, specifically stating:

> Relevant services provided to the family include: The mother was referred for anger management, counseling, mental health, and housing. . . . The [children] have been referred for independent living, individual counseling, and the Village Network. Both [children] refused to engage in family counseling.

We find that the record supports this finding. In this case, the record shows that CCDCFS made reasonable efforts to reunite Mother with the children by establishing a workable case plan that included services to address concerns with Mother's mental health, anger management, and parenting. Although Mother engaged with some of the services in the case plan, she failed to obtain enough benefit that would enable her to reunite with her children.

{¶ 49} Thus, although the trial court was not required to make a "reasonable efforts" finding in its permanent custody order, we find the record demonstrates that the agency did, in fact, make reasonable efforts to return the children to Mother's home. Due to the age of the children, the agency was unable to force them to attend family counseling. As noted by the trial court, "[t]he severity of past experiences and trauma of both children have led to a complete refusal to engage in any family counseling with Mother and neither want visitation or a relationship with [her]." Mother's second assignment of error is overruled.

## C. Due Process

{¶ 50} In her third assignment of error, Mother argues that the termination of her parental rights violated her due process rights by not granting her the time, opportunity, or referrals necessary to complete her case plan services.

**{¶ 51}** Mother argues that the agency moved too quickly to terminate her parental rights, without making any reasonable effort to prepare the children for family counseling, giving her a single referral for anger management, or providing an opportunity for Mother and the children to engage in family counseling. We have addressed this issue above and found it meritless.

**{¶ 52}** As far as Mother's assertion that the agency moved too quickly, Ohio law authorizes an agency to request an original disposition of permanent custody on a complaint. *See* R.C. 2151.353(A)(4). Mother has not directed us to any requirement that a child must first be placed in temporary custody before permanent custody may be ordered.

**{¶ 53}** Mother further contends that the agency failed to present any evidence of neglect with regard to Kh.D.; however, this is an issue that should have been separately assigned as error. App.R. 12 outlines the parameters of the appellate court's exercise of its reviewing powers and provides that a court of appeals is not required to consider errors that were not separately assigned and argued, as required by App.R. 16(A). *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 341 (1986). *See also In re I.Z.*, 2023-Ohio-3065, ¶ 13 (8th Dist.).

**{¶ 54}** Mother's arguments are without merit, and we overrule her third assignment of error.

### III. Conclusion

{¶ 55} After thoroughly reviewing the entire record, we find that the juvenile court's judgment was not against the manifest weight of the evidence and affirm the award of permanent custody of Kh.D. and Ky.D. to CCDCFS.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN A. GALLAGHER, P.J., and
ANITA LASTER MAYS, J., CONCUR